GERRY HILDEBRAND, APPELLANT, V. LARRY HILDEBRAND, APPELLEE.

477 N.W.2d 1

Filed November 22, 1991.   No. 91-163.

Van A. Schroeder, of Bertolini, Schroeder & Blount, for appellant.

Richard W. Harter, of Harter Law Office, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

CAPORALE, J.

## I. INTRODUCTION

The petitioner-appellant former wife, Gerry Hildebrand, instituted this action in an effort to obtain a legal separation from the respondent-appellee former husband, Larry Hildebrand. He in turn successfully cross-petitioned for dissolution of the marriage. In this court the wife asserts, in summary, that in granting the husband's prayer, the district court erred in its (1) child custody and related support determinations and (2) property divisions and alimony award. We affirm as modified.

## II. FACTS

The parties married each other twice, the first time on July 31, 1966. That marriage lasted 13 years 10 months, having been dissolved by an Alaska decree in June 1980. The parties then remarried on October 4, 1984. That marriage lasted 6 years 3 months, being terminated by the decree in question on January 10, 1991. While the second marriage produced no children, the first union brought forth two daughters: Patricia Anna, born on January 17, 1970, and Grace Elaine, born on May 23, 1972. An automobile accident rendered the older daughter a quadriplegic in September 1987, and the wife serves as her

guardian. This daughter lives in a house which the parties acquired through a special government assistance program, but which they did not themselves occupy and which is not involved in the issues presented. Neither is this daughter's care at issue, except for the payment of the bills discussed in part III(2)(c) below.

Notwithstanding that each of the parties sought sole custody of the younger daughter, who was then a little less than a half year away from adulthood, the district court granted them joint custody. The district court specifically noted that with respect to the younger daughter's support, the "[o]rder of the Alaska court . . . remains in effect." While the record does not contain a copy of the Alaska decree, the district court, in the course of entering a temporary order on December 21, 1989, wrote that the husband remained obligated to pay "the sum of $200.00 per month" in support for the younger daughter under the terms of that decree. This statement apparently refers to the sum the husband, in satisfaction of the Alaska decree, had caused to be automatically deducted from his paycheck and deposited in an account owned by the wife.

The husband served in the U.S. Air Force throughout the 20 years the parties were married, and the wife accompanied him as required. The evidence suggests that the couple has lived in Germany, Alaska, Montana, and Nebraska. When the parties' older daughter was injured in 1987, the wife quit her employment and stayed home with the girl until February 1989. During this time, the wife withdrew the entire amount of her civil service retirement, approximately $5,000, to pay family expenses. The husband is a weather forecaster, but for the 4 years prior to retirement has worked in manpower management. He has an associate degree and has enrolled in a university course in order to earn a bachelor's degree in geography.

The husband was scheduled to retire from the U.S. Air Force on February 1, 1991, after 27 years of service, at which time he would receive a gross retirement pay of $1,711 per month. The wife specifically sought an interest in his retirement pension. However, the district court refused to grant the wife a property interest in the pension but, rather, awarded her alimony of $500

per month for 6 months, then $200 per month for her lifetime, regardless of whether she marries. In so ruling, the district court concluded that the husband's pension plan through the first years of military service was not a proper marital asset for distribution. Instead, the district court estimated that for the current 6 years of marriage, the wife's share of the pension had a value of slightly less than $200 a month.

The subject decree also awarded the parties' residence to the wife, subject to a mortgage requiring a $635.39 payment per month and a home improvement mortgage loan requiring a payment of approximately $100 per month, and holds the husband "harmless from liability for those debts."

The wife also received an interest worth approximately $3,700 in a retirement account and various other items of personal property, including life insurance policies and two automobiles, in one of which the younger daughter had an ownership interest. The wife was ordered to pay approximately $1,600 in debts she incurred and, in addition, was obligated to pay $162 per month on a loan covering an automobile she was awarded.

The husband was awarded an interest having a value of approximately $4,300 in the aforementioned retirement account, a checking account with a balance of $1,894, and various other items of personal property, including a pickup truck, a boat motor, and a trailer. He was ordered to pay approximately $13,800 in debts.

At the time of trial, the husband had a net monthly income of $2,636.57 from the Air Force and approximately $400 a month as an automobile salesman. The wife, a civil service secretary at Offutt Air Force Base, was earning $476.21 every 2 weeks.

### III. ANALYSIS

With the foregoing factual background in mind, we turn our attention to an analysis of the issues presented by the wife's two summarized assignments of error.

### 1. CHILD CUSTODY AND SUPPORT

The first summarized assignment of error urges that the district court erred in granting joint custody of the younger daughter, arguing that sole custody should have been granted to

the wife, with appropriate child support.

We begin our review of this summarized assignment by noting that the district court erroneously concluded that the Alaska decree was effective and binding in regard to child support. We agree with the statement in *Schaff v. Schaff*, 446 N.W.2d 28, 31 (N.D. 1989), that "if the parties to a divorce decree remarry each other, they no longer have separate rights of custody and separate obligations for future support; rather, the same joint rights to custody and joint obligations for future support which antedated the divorce are resumed." See, also, *Davis v. Davis*, 68 Cal. 2d 290, 437 P.2d 502, 66 Cal. Rptr. 14 (1968); *In re Marriage of Root*, 774 S.W.2d 521 (Mo. App. 1989); *Oliphant v. Oliphant*, 177 Ark. 613, 7 S.W.2d 783 (1928); *Cain v. Garner*, 169 Ky. 633, 185 S.W. 122 (1916); *Lockard v. Lockard*, 49 Ohio Op. 163, 102 N.E.2d 747 (1951); *Jenkins v. Followell*, 262 P.2d 880 (Okla. 1953); *Slape v. Slape*, 553 S.W.2d 171 (Tex. Civ. App. 1977); *Warren v. Warren*, 213 Ga. 81, 97 S.E.2d 349 (1957). In *In re Marriage of Root, supra*, the court wrote at 774 S.W.2d at 523:

> It would be absurd to hold that once parents remarry each other and the family is again intact and residing in the same household, the former noncustodial parent must pay future installments of child support to the other parent per the past divorce decree. That is to say, the remarriage should terminate the former noncustodial parent's duty to pay any child support *that would have become due after the remarriage.*

(Emphasis in original.)

Indeed, *Scheibel v. Scheibel*, 204 Neb. 653, 284 N.W.2d 572 (1979), implies that child support obligations terminate upon remarriage of the parties. The parties therein were divorced and the decree required the father to pay $25 per month in child support. Six years later, the parties remarried and again divorced, at which time the mother brought suit against the father to collect arrearages for child support claimed to have occurred between the first divorce and the second marriage. This court affirmed the mother's right to collect the delinquent amount, thereby leading to the inference that once parties remarry, the former child support order is moot, while any

deficiencies prior to the marriage are collectible. See Annot., 26 A.L.R.4th 325 (1983).

When the parties to this action remarried in 1984, all future child support obligations under the Alaska decree were terminated. The fact that $200 continued to be automatically withdrawn from the husband's paycheck and placed into a private account for the wife cannot be interpreted as a continuation of the child support. At the moment of their remarriage, the $200 transfer became simply that, a transfer. It was no longer in satisfaction of any legal or court-enforced obligation.

That having been developed, we turn our attention to what should have been done.

### (a) Custody

Neb. Rev. Stat. § 42-364(3) (Reissue 1988) provides:

> The court may place the custody of a child with both parents on a shared or joint-custody basis when both parents agree to such an arrangement. In that event, the parents shall have equal rights to make decisions in the best interests of the child in their custody. The court shall not place a child in joint custody without conducting a hearing in open court and specifically finding that joint custody is in the best interest of the child regardless of any parental agreement or consent.

Thus, two requirements must be satisfied before a court may grant joint custody of a child: (1) The parents must agree to the arrangement, and (2) a hearing must be held to determine that such serves the best interests of the child. In addition, this court has frequently and consistently expressed disapproval of joint custody as a purported solution for the difficulty confronted by a court in determining a question concerning child custody, *Ensrud v. Ensrud*, 230 Neb. 720, 433 N.W.2d 192 (1988), explicitly stating that joint custody is not favored and must be reserved for only the rarest of cases, *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987).

In the instant action, neither the wife nor the husband requested joint custody; rather, each sought sole custody of the younger daughter. Additionally, no determination appears to

have been made concerning what custody arrangement would best serve the child's interests. While the district court made several references to the fact that the younger daughter was living alone in an apartment, it appears to have relied solely on the fact that she would be emancipated in 6 months. Whether the custody arrangement was to last 6 days or 6 years, § 42-364(3) was violated; however, at this point, the daughter is an emancipated adult, and, consequently, the issue of her custody is moot, except as it is necessary to determine which parent should have been given custody during the 6 months of the daughter's minority and whether child support should have been paid during that period and, if so, in what amount.

The younger daughter lived in the family home with the wife from the time the latter filed her petition on October 12, 1989, until October 1990, when the daughter moved into an apartment. In connection with that move, the wife testified that the daughter had a drinking problem, wanted to be on her own outside the presence of adults, and voluntarily moved out of the family home. Irrespective of the daughter's desire to be on her own, she continued to be supported by her parents and thus did not become emancipated. See *Accent Service Co., Inc. v. Ebsen*, 209 Neb. 94, 306 N.W.2d 575 (1981).

Under the circumstances, the younger daughter's custody, during the remaining period of her minority, should have remained with the wife. That leaves the matter of child support.

### (b) Support

The daughter lived on her own as a minor for approximately 8 months, from October 1990 until May 1991, when she reached majority. From the entry of the temporary order to the first day of trial, November 26, 1990, the husband had paid $400 per month in support for the younger daughter, $200 under the arrangement carried over from the Alaska decree and $200 as the result of the district court's temporary order, and, in addition, had paid for the daughter's apartment. The wife testified that since the daughter moved out in October 1990, she has given her $300 a month and retained the rest of the support money for reimbursement for tires she bought for the daughter.

The Nebraska Child Support Guidelines (rev. 1991) compute

the presumptive share of each party's child support obligation on the basis of the "total monthly income," which is defined as the "income of both parties derived from all [moneys]" except for that derived from certain designated sources not involved in this case, less, so far as relevant to our inquiry, tax and Social Security insurance payments. *Peterson v. Peterson, ante* p. 113, 474 N.W.2d 862 (1991). The husband's monthly income to February 1, 1991, was $3,036.57 ($2,636.57 from the Air Force and $400 as a part-time automobile salesman). The wife had a 4-week income of $952.42, or approximately $1,030 per month. Thus, the total monthly income was $4,066.57, 75 percent of which was attributable to the husband and 25 percent to the wife.

According to the income shares formula of the guidelines, a total monthly income of $4,066.57 entitles an only child to $655.66 in support. Thus, the husband's share of the child support is equal to 75 percent multiplied by $655.66, or $491.74 a month; the wife's share is 25 percent multiplied by $655.66, or $163.92. Consequently, the husband initially owes the wife $333.11 for the 21 days in January remaining from the date of the decree, January 10, 1991.

From February until May, the husband had a gross military pension of $1,711 and earned approximately $400 a month as an automobile salesman, for a gross monthly income of $2,111. Giving him credit for $600 in tax and Social Security insurance payments, he had a monthly income of $1,511. The wife's monthly income remained at $1,030, producing a total monthly income of $2,541 for the parties. According to the guidelines, such a total monthly income entitles an only child to $466.74 per month in support. Since the husband's income represents 59 percent of the parties' total monthly income, he is responsible for $275.38 and the wife for the remaining 41 percent, or $191.36. Consequently, for the period from February 1, 1991, through May 22, 1991, the husband's initial share of child support is $1,021.57 (for the months of February through April, plus 22 days in May). The husband's total child support obligation from January 10 through May 22, 1991, is therefore $1,354.68, minus any child support contributions he has made subsequent to the entry of the subject decree.

## 2. Property Divisions and Alimony Award

In connection with the second summarized assignment of error, the wife makes four complaints: that she was not granted a sufficient interest in the husband's pension, that she was given insufficient alimony to cover the house mortgages, that the district court failed to account for a credit card debt, and that the district court ordered her to deliver to the husband a gun she no longer possessed.

We begin this aspect of our analysis by recalling that Neb. Rev. Stat. § 42-365 (Reissue 1988) states in part:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party.

Although alimony and distribution of property have different purposes in marriage dissolution proceedings, "they are still closely related in the matter of determining the amount to be allowed, and circumstances may require that they be considered together . . . ." *Kullbom v. Kullbom*, 209 Neb. 145, 149, 306 N.W.2d 844, 846 (1981). Moreover, the ultimate test in determining the appropriateness of the division of property is reasonableness as determined by the facts in each case. *Hallan v. Hallan*, 233 Neb. 261, 444 N.W.2d 896 (1989).

### (a) Pension

The wife first avers that she has a right to a share of the husband's pension reflecting 20 years of marriage.

In considering this issue, it must be borne in mind that when the parties were divorced in 1980, Alaska did not recognize military pensions as marital property subject to division upon divorce. See *Cose v. Cose*, 592 P.2d 1230 (Alaska 1979). Thus, upon the entry of the Alaska decree, the portion of the pension

earned during the first marriage became the husband's separate property. See *Froelich v. Froelich*, 236 Neb. 808, 464 N.W.2d 310 (1991) (judgment rendered by sister state which has jurisdiction is to be given full faith and credit in Nebraska). The district court therefore correctly determined that the portion of the pension earned during the first marriage was not a marital asset and that the only part of the pension subject to distribution was the portion earned during the second marriage.

In that regard, Neb. Rev. Stat. § 42-366(8) (Reissue 1988) provides, in relevant part: "The court shall include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans, annuities, and other deferred compensation benefits owned by either party, whether vested or not vested." While it has been said that this court has not favored lifetime awards of alimony, *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983), in *Taylor v. Taylor*, 217 Neb. 409, 348 N.W.2d 887 (1984), we held that the awarding of alimony in a specified amount to one spouse for her or his lifetime is an appropriate method of dealing with the other spouse's pension funds. We have also declared that a trial court may exercise "discretion in valuing pension rights and in dividing such rights between the parties." *Rockwood v. Rockwood*, 219 Neb. 21, 23, 360 N.W.2d 497, 499 (1985).

In *Carruth v. Carruth*, 212 Neb. 124, 321 N.W.2d 912 (1982), we stated that one of the elements to be considered in the allowance of alimony is the earning capacity of the other spouse. Not only is the husband's earning capacity in this case presently greater than that of the wife, it has the potential to increase even more as a result of his educational pursuit. On the other hand, the wife's earning capacity is unlikely to improve. It is also obvious that she has fixed expenses of approximately $900 per month in automobile and house mortgage loans over and above the costs of retiring the debts the decree obligated her to pay and the costs of clothing, feeding, and maintaining herself. Under the circumstances, we conclude that the alimony awarded is inadequate. Although the $500 per month awarded for the first 6 months should not be modified, the $200 per

month awarded thereafter for the rest of her life is to be increased to $400 per month.

### (b) Mortgages

The wife next complains that the district court failed to provide her with sufficient funds with which to pay the mortgage loans against the house she was awarded.

In *Reuter v. Reuter*, 218 Neb. 732, 359 N.W.2d 78 (1984), the ex-wife had been given $200 a month in child support, $200 a month in alimony for 60 months, and the house, owned by her parents, which had improvement debts of $50,750. At the time of trial, the ex-wife was unemployed. The ex-husband earned $1,550 per month at his full-time job and $5,000 per year farming. The ex-wife challenged the district court decision, arguing that she should not be required to pay all of the joint debt and that the alimony award was inadequate, given the $600-a-month payments on the debt. This court, however, found that obligating the ex-wife for the full debt was not an abuse of discretion.

Neither can it be said that the district court abused its discretion in this case.

### (c) Additional Debt

The wife also complains that the district court failed to consider and allocate the debt incurred on a particular VISA credit card account held in her name. There is no question that in dividing marital property, the trial court should take into consideration the indebtedness of the parties in order to divide the net marital estate. See *Keim v. Keim*, 228 Neb. 684, 424 N.W.2d 112 (1988). See, also, *Black v. Black*, 221 Neb. 533, 536, 378 N.W.2d 849, 851 (1985) ("[w]e have consistently spoken of dividing the *net* marital estate" (emphasis in original)).

The wife testified that she possessed her own VISA credit card account, which had approximately $1,500 to $1,600 in debt. She also testified that this debt was incurred for "our boat [and] some . . . for our handicapped child." Consequently, the wife has asked the husband to share responsibility in paying off her VISA debt by contributing $500.

The husband's VISA credit card account was paid off prior

to separation out of the joint account of the parties, but he, personally, had incurred an additional $1,200 in debt thereon.

The subject decree simply requires the husband to pay off VISA. Although it is unclear to which VISA account the district court makes reference, it appears that the court was obligating the husband to pay off his own account. Concluding that the wife's VISA account was not addressed and since the evidence is uncontroverted that part of the $1,500 to $1,600 debt was incurred for family expenses, we determine it was error for the district court to ignore disposition of the debt incurred on the wife's VISA account; accordingly, the husband is to pay $500 toward the retirement of this debt.

### (d) Gun

Finally, the wife asserts the district court erred in requiring her to deliver to the husband a certain Ruger .243-caliber rifle, claiming that as she is no longer in possession of it, the gun cannot be considered marital property subject to distribution.

The husband testified that when the couple were in Montana, the gun "was bought for [the wife] to use and if you want to call it a gift then, yes, it was." However, the Alaska divorce decree awarded the gun to the husband, and it thus became his separate property which he brought to the second marriage. See *Simmonds v. Fenton*, 95 Neb. 771, 146 N.W. 944 (1914) (interest awarded wife pursuant to divorce decree becomes wife's property and is not subject to attachment in action against husband). See, also, *Henderson v. Henderson*, 764 P.2d 156 (Okla. 1988) (property distributed from previous marriage remains personal upon couple's subsequent marriage together). Subsequent to the husband's moving out of the house, the wife pawned the gun for $220 to her oldest brother, saying that she had "someone holding it for $220 that they loaned me."

The district court did not abuse its discretion in awarding the gun to the husband. The American Heritage Dictionary of the English Language 963 (1969) defines pawn as "[s]omething given as security for a loan." Further, the common understanding of pawning property connotes an intent to retrieve it at some later date. The wife's own words suggest that

the transaction was temporary and that she pawned the gun to her brother. She need only repay him the $220 he loaned her to retrieve the gun she pledged as security for the loan.

## IV. ORDER

For the foregoing reasons, we direct that the decree of the district court be modified as set forth in this opinion, and as so modified, the decree is affirmed.

AFFIRMED AS MODIFIED.