DENNIS J. POLLY, APPELLANT, V. LINDA L. POLLY, APPELLEE.

487 N.W.2d 558

Filed May 12, 1992. No. A-90-271.

Mark S. Bertolini, of Bertolini, Schroeder & Blount, for appellant.

Lisa C. Lewis, of Byrne, Rothery, Lewis, Tubach, Zielinski & Peterson, for appellee.

SIEVERS, Chief Judge, and HANNON and WRIGHT, Judges.

WRIGHT, Judge.

This is an appeal from the trial court's order directing the petitioner husband to pay attorney fees, alimony based on a pension plan, and all uninsured medical, dental, and orthodontic care, and the court's division of the marital property and allocation of the marital debts.

Appellate review of a dissolution of marriage is de novo on the record to determine whether there has been an abuse of discretion by the trial court, whose judgment will be upheld in the absence of any abuse of discretion. *Druba v. Druba*, 238 Neb. 279, 470 N.W.2d 176 (1991).

When the evidence is in conflict, the appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *Beran v. Beran*, 234 Neb. 296, 450 N.W.2d 688 (1990).

## FACTS

Dennis J. and Linda L. Polly were married July 15, 1972, and two children were born of the marriage, Chad Russell, born June 2, 1973, and Teresa Ann, born June 30, 1975. The dissolution proceeding was transferred to the separate juvenile court of Sarpy County on November 20, 1989.

Custody of Chad was awarded to Dennis subject to visitation, and Linda was ordered to pay $50 per month for support until Chad reached the age of 19. Teresa remained in the custody of the court, with placement by the Department of Social Services. Dennis was ordered to maintain both children on his health insurance policy and to pay all medical, dental, orthodontic, and optical expenses not covered by insurance.

Dennis was ordered to pay alimony of $300 per month for 12 months and then $400 per month for 48 months, terminable upon the death of either party or Linda's remarriage. In addition, Dennis was ordered to pay alimony to Linda of $250 per month for life, not subject to termination upon her remarriage. The $250 alimony payments were ordered to commence in the year 2004, at which time Dennis would receive $850 per month from his pension plan.

The court assigned the following values and debts to the parties:

|  | Dennis | Linda |
| --- | --- | --- |
| Household goods and personal property | $ 6,990.00 | $ 3,600.00 |
| Car equity | 1,400.00 | 2,500.00 |
| Stock | 2,313.29 | - 0 - |
| TOTAL | 10,703.29 | 6,100.00 |
| Less debts | (12,817.51) | (10,191.91) |
| NET DISTRIBUTION | $(2,114.22) | $(4,091.91) |

To further equalize the estates, the court ordered Dennis to pay Linda $988.84 and ordered Linda to pay Dennis $993. The court found that Linda's basic needs totaled $1,109 per month. At full-time employment, she was earning a net of $580 per month. Dennis' basic needs for himself and his son were $1,080 monthly. He had additional payments of $981 per month for a total of $2,061 per month, and his net monthly income was $2,296.

At the time of the decree, Dennis was age 40 and worked as a technical support troubleshooter for computer systems at US

West Communications. Linda worked for a short time as a cook and cleaner at a service station and testified that she would be working full time in another month.

Dennis assigned as error that the trial court's decision was contrary to the evidence and the law and the court abused its discretion (1) by ordering him to pay $1,250 toward Linda's attorney fees and all of the court costs; (2) by ordering him to pay alimony based on his unvested pension plan; (3) by awarding alimony that was excessive for too long a period of time; (4) by requiring him to pay all uninsured medical, dental, and orthodontic care; and (5) in the division of the personal property and marital debts.

## PENSION PLAN

The court ordered Dennis to pay $250 per month as alimony from his pension plan beginning in the year 2004, to be terminated only upon the death of either party. Neb. Rev. Stat. § 42-366(8) (Reissue 1988) requires the court to "include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans . . . whether vested or not vested." Pension plans shall be included as a part of the marital estate for purposes of the division of property at the time of dissolution. *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981).

The problem is when and how to value the pension plan for purposes of dividing the marital property at the time of the dissolution. The plans are often unmatured and subject to change in value depending upon whether the employee continues to work, the age of retirement, and a variety of other factors that may apply to a specific plan. Prior to the adoption of § 42-366(8), the pension plan of one party was not a joint fund for the benefit of the other party and was not ordinarily divided in the property settlement. In certain situations, it was considered as a source for the payment of alimony. *Witcig v. Witcig*, 206 Neb. 307, 292 N.W.2d 788 (1980); *Howard v. Howard*, 196 Neb. 351, 242 N.W.2d 884 (1976).

In the present case, the court attempted to divide the pension plan by awarding Linda $250 per month alimony to commence in the year 2004. The problem with such an award was that at

the time of the decree the value of the plan, if Dennis were to voluntarily retire from his employment, was $76 per month. If he continued his present employment, his pension plan would pay him $850 per month in 2004.

Section 42-366(8) requires pension plans to be included as a part of the marital estate. The value of the plan should be determined at the time of the decree. In *Raley v. Raley*, 218 Neb. 644, 357 N.W.2d 470 (1984), the court awarded the wife $200 per month as one-half of the amount the husband would receive as a retirement benefit if he were to retire from the U.S. Postal Service as of the date of the decree. The court made the award based upon the value of the plan at the time of the decree.

The reason for considering pension plans in the award of alimony was prompted by the decision of the U.S. Supreme Court in *McCarty v. McCarty*, 453 U.S. 210, 101 S. Ct. 2728, 69 L. Ed. 2d 589 (1981), which held that military pensions could not be considered part of the marital estate. Thus, alimony became the vehicle by which pension plans were considered in the division of the marital assets. In *Pyke v. Pyke*, 212 Neb. 114, 321 N.W.2d 906 (1982), the court recognized that the spouse required to pay alimony may have income from a military pension from which the spouse would be able to make alimony payments, although the court was prohibited from making an award of part of the pension to the nonmilitary spouse.

The effect of the Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1401 et seq. (1988), passed in 1982, is that nondisability military pensions need no longer be treated differently than nonmilitary pensions. The nonmilitary spouse is now entitled to an interest in the military pension. *Taylor v. Taylor*, 217 Neb. 409, 348 N.W.2d 887 (1984).

Alimony has been used for the division of pension plans, but it is the exception and not the rule. The Nebraska Supreme Court has not favored lifetime awards of alimony, *Albers v. Albers*, 213 Neb. 471, 329 N.W.2d 567 (1983), but it has approved the trial court's use of such awards, *Hildebrand v. Hildebrand*, 239 Neb. 605, 477 N.W.2d 1 (1991). *Hildebrand* recognized that the awarding of alimony in a specified amount to one spouse for his or her lifetime was an appropriate method

of dealing with the other spouse's pension funds.

In *Hildebrand*, the husband was scheduled to retire from the U.S. Air Force on February 1, 1991, with gross retirement pay of $1,711 per month. The trial court awarded the wife alimony of $500 per month for 6 months, then $200 per month for her lifetime, regardless of whether she remarried. The court had estimated that the wife's share of the pension for her 6 years of marriage was approximately $200 per month. The Supreme Court recognized the trial court's attempts to estimate the wife's share of the pension which accrued during the marriage, but modified the award and gave the wife $400 per month for the rest of her life. This would compute to about 23 percent of the retirement benefits. *Hildebrand* did not have the problem of valuation of the pension plan because the retirement was nearly contemporaneous with the divorce and no substantial amount of additional worktime was needed before the monthly pension was established at the level of $1,711 per month, the basis the court used for its award. In the present case, Dennis must remain employed for another 15 years in order to increase the value of the pension plan from $76 per month to $850 per month.

The Supreme Court of Wisconsin in *Bloomer v. Bloomer*, 84 Wis. 2d 124, 267 N.W.2d 235 (1978), discussed methods of valuing pension plans, depending upon the circumstances and status of the parties in each case. The court noted that it was clear that any contributions to the retirement fund after the divorce, whether made by employee or employer, would not be an asset of the marital estate subject to division. Only that part of the fund or the benefits under it which are attributable to the marriage should be considered. This finding is in accordance with *Hildebrand*, where the court noted that the portion of the pension earned during the couple's first marriage was not a marital asset and that only the part of the pension earned during their second marriage was subject to distribution as a marital asset. See § 42-366(8).

*Bloomer* correctly recognized that in many divorces the pension plans are the most significant marital assets. As noted by the court, the problems of valuing a pension plan are numerous and varied. If the employee continues to work, the

plan is deferred compensation and incentive for the employee to remain with his employer. The plan may continue to grow with contributions from both employer and employee, which creates a larger benefit that is deferred to retirement age. Voluntary retirement before a certain age may create penalties for the employee which depend upon the nature and content of the plan. Most plans will return the employee's contributions but may severely limit the contributions made by the employer unless the employee remains until the plan vests or matures on a certain date.

Three possible methods of valuing the pension plan at the date of the dissolution were discussed in *Bloomer*. One method is to determine the amount of the contribution made by the husband or wife and award the spouse an appropriate share. Another method is to "attempt" to calculate the present value of the retirement benefits when they vest under the terms of the pension plan. This method involves considerable speculation and uncertainty. The third and most widely accepted method is to determine a fixed percentage of the future benefits to be paid to the spouse, payable if and when they are payable to the owner of the plan.

We do not adopt the court's conclusion in *Bloomer* that in awarding a percentage of the pension plan it is unnecessary to determine the value of the pension fund. The percentage of the pension plan awarded must be considered in relation to the value of the remaining property in the division of the assets acquired during the marriage. Pension plans are marital assets to be considered for purposes of the division of property at the time of dissolution. § 42-366(8). The determination of the percentage should be based upon the value of the plan at the time of the decree. This method avoids penalizing the owner of the plan if he or she were to retire early.

We mention the income tax consequences of early withdrawal just to point out another potential problem with the distribution of pension plans and to recognize that taxes may further limit the amount available upon distribution in a lump sum. Calling such distributions alimony may create unanticipated income tax consequences as opposed to a distribution of property contemplated by § 42-366(8).

In the case at bar, the court attempted to divide the marital estate equally between the parties. It determined that $250 per month commencing in the year 2004 should be awarded as alimony for life. The court found that Dennis had a net monthly income of $2,296 and that Linda had a net monthly income of $580. The ultimate test in determining alimony is one of reasonableness. *Raley v. Raley*, 218 Neb. 644, 357 N.W.2d 470 (1984). We find there was no abuse of discretion in the $250 a month alimony award, as the court attempted to divide the pension plan.

We recognize the problem with awards of this type because the pension plan was not valued and a percentage awarded as of the date of the decree and the division of the plan was addressed as alimony in a fixed amount. Since there is a possibility that Dennis' pension plan could be considerably less if he were to retire early from his employment with US West, Dennis may have to seek a modification of the award if he does not receive the amount described in the pension plan or its equivalent because of life's uncertainties or any other reason.

## CHILD SUPPORT

The trial court awarded $50 per month in child support payable from Linda to Dennis. Exhibit 19 offered by Linda showed the obligation of Linda, pursuant to the Nebraska Child Support Guidelines, to be $84.87 per month. The child support guidelines shall be applied as a rebuttable presumption. The guidelines state that all orders for child support obligations shall be established in accordance with the provisions of the guidelines unless the court finds in writing or on the record that one or both of the parties have produced sufficient evidence to rebut the presumption that the guidelines should be applied.

In general, child support payments should be set according to the guidelines established by the Nebraska Supreme Court. *Knippelmier v. Knippelmier*, 238 Neb. 428, 470 N.W.2d 798 (1991). The trial court made no findings, and the award of $50 per month is therefore modified to award the sum of $84.87 per month child support payable from Linda to Dennis.

## ATTORNEY FEES

We find no abuse of discretion in the award of the sum of

$1,250 toward Linda's attorney fees and costs. The award of attorney fees in marriage dissolution cases is initially entrusted to the discretion of the trial judge and, on appeal, will be affirmed absent an abuse of discretion. *Hamm v. Hamm*, 228 Neb. 294, 422 N.W.2d 336 (1988).

## ALIMONY

The trial court awarded Linda alimony in the sum of $300 per month for 12 months and $400 per month for 48 months, plus $250 per month commencing August 1, 2004, which has been discussed above. The award of alimony is a matter which is initially entrusted to the discretion of the trial judge and, on appeal, that award should be affirmed in the absence of an abuse of discretion. *Mellor v. Mellor*, 235 Neb. 361, 455 N.W.2d 177 (1990).

The ultimate test in determining the appropriateness of awards of alimony is reasonableness as determined by the facts in each case. *Helms v. Helms*, 234 Neb. 630, 452 N.W.2d 269 (1990). We find that the award of alimony was reasonable, and we affirm the award of alimony for 12 months and 48 months, respectively. The award of alimony in the sum of $250 per month commencing in 2004 is affirmed as per our above findings.

## DIVISION OF PROPERTY AND DEBTS

Dennis argues that the division of the property was an abuse of discretion because certain debts were not included for which he was responsible and because attorney fees were not included for the costs of this action, which debts and fees amounted to $10,659 more than determined by the court.

Upon our de novo review of the record, we cannot say the trial court was wrong in its determination of the value of the personal property or in its assessment of the debts and the division of the personal property. We therefore affirm the court's division of the personal property.

## MEDICAL INSURANCE AND EXPENSES

Dennis was ordered to retain the children on his employee health insurance policy, for which he pays no premium, and to pay all uninsured medical, dental, orthodontic, and optical

expenses for the parties' minor children. He argues that the order to pay all uninsured expenses is an abuse of discretion and that Linda should be required to contribute at least 11.5 percent of these expenses, increasing to 25 percent when she begins full-time employment. We do not find that the court abused its discretion in making this award. The record is clear that Dennis earns a much greater salary than Linda, and as such he is in a much better position to pay these expenses.

For the above reasons, the decree of the court is affirmed. Each party shall pay his or her own attorney fees for services in this court.

AFFIRMED.