BILLIE JEAN PARKER, APPELLEE, V. ROBERT J. PARKER, APPELLANT.

492 N.W.2d 50

Filed June 16, 1992.   No. A-90-535.

Steven J. Lustgarten, of Lustgarten & Roberts, P.C., for appellant.

Thomas C. Hemphill and Albert L. Feldman, of Harris, Feldman, Stumpf Law Offices, for appellee.

SIEVERS, Chief Judge, and HANNON and WRIGHT, Judges.

SIEVERS, Chief Judge.

## NATURE OF THE CASE

This is a divorce action which involves division of property and alimony issues. The husband, Robert J. Parker, appeals from the decree of the district court for Douglas County. We affirm in part, modify portions of the decree, and remand the cause with directions.

## FACTUAL BACKGROUND

At the time this divorce action was tried, in late March 1990, Robert J. Parker and Billie Jean Parker had been married 28 years. They were married July 7, 1961, in Little Rock, Arkansas. One child, Robert J. Parker, Jr., was born to the marriage. However, Billie had previously been married, and a son, Tommy Lynn Pearce, was born to one of those prior marriages. Robert parented Tommy as he did his natural son. Both sons are now adults, and at the time of trial, Robert junior had recently graduated from the University of Nebraska College of Law.

Robert was employed for more than 30 years by the United Food & Commercial Workers Union. He is now retired and drawing a net pension of $2,600.18 per month. Billie also worked throughout the marriage, including an 18-year stint at Ross' Steak House in Omaha. Although Billie suffers from back difficulties as a result of three automobile accidents, she was employed at the time of trial as a hostess-cashier at the Old Country Buffet, earning $198.55 net income per month.

The family home, purchased in 1968, is located at 4311 Ridgeway Road in Omaha. The home is owned free of debt, as is an unimproved vacation lot at Blue Eye, Missouri.

During the marriage, the parties jointly engaged in the hobby

of buying and selling antiques and collectibles. After the parties separated, an auction of some of their collection was held, and the proceeds were divided equally, with a net of $21,270.53 to each party. In addition, Robert junior and Tommy supervised a "blind draw" of collectibles and antiques. The sons assembled 286 boxes of these items from which each of the parties alternately chose a box, without knowing the contents, until Robert and Billie had each received 143 boxes. Unfortunately, this was not a complete disposition of the antiques and collectibles.

A fair amount of what can only be described as frugality has resulted in considerable cash assets. That cash may be placed in three categories: $71,808.61 "saved for the child and grandchildren," $29,498.10 held jointly, and $81,641.33 which Billie claims as her sole and separate property.

Despite the "blind draw" described above and the auction generating net proceeds of over $40,000, there are still conflicting claims between the parties about antiques, collectibles, and garden-variety household goods. The record is less than concise as to the extent of the unresolved personal property items, their location, their possession, and their value.

## TRIAL COURT'S DECREE

The trial court awarded Billie 37.5 percent of Robert's gross pension, together with a like percentage of future increases. The home at 4311 Ridgeway Road was awarded to Billie, subject to a $20,000 lien in favor of Robert. The lien was to draw interest at the annual rate of 6 percent until paid and was payable on or before Robert's 65th birthday, March 19, 1992. Robert was awarded the real estate at Blue Eye, Missouri.

The trial court awarded each party the items that each had received in the 143 boxes as their sole and separate property. The court then decreed that "[t]he remaining articles of personal property, including all household items in the possession of each party not otherwise disposed of herein, shall be sold at auction." The court specifically found that it was unable to establish an equitable division of the antiques, particularly because some were used as normal and regular household items.

Billie received a 1982 Chevrolet Caprice, and Robert received a 1986 Mercury Marquis, a 1982 Ford van, a 1973 Ranger boat (with trolling motor), and a 1987 tandem-wheel trailer. Robert was awarded the Graphic Scanning Company and Xenex corporate stock. Robert was awarded his IRA account at Heritage Federal in the amount of $10,000, and Billie received her Heritage Federal IRA in the amount of $9,251.88.

The $81,641.33 described in the factual statement as property which Billie claimed to be solely hers was awarded to her as being outside of the marital estate. Robert was awarded a FirsTier NOW checking account in an unknown amount, together with a FirsTier checking account having a balance of $5,090.43 and a First Federal Savings account with a balance of $1,865.24. Billie received a FirsTier checking account with a balance of $3,290.55.

The cash from the postseparation auction of antiques was split equally. The district court ordered that the bank accounts which were described as being maintained for Robert junior and the grandchildren be liquidated and divided equally between the parties. Finally, the district court ordered that Billie receive "the jewelry in the approximate amount of $5,000."

## ASSIGNMENTS OF ERROR

Robert assigns numerous errors on the part of the trial court, which are summarized as follows: The trial court erred (1) in valuing the family home at merely $72,000 and giving him only a $20,000 lien on it; (2) in making an inappropriate division of marital assets, with the result that Robert received only 19 percent of the marital assets; (3) in failing to include the proceeds of Billie's motor vehicle accidents in the marital estate; (4) in failing to specify that the auction of personal property which the district court ordered should include the items on Robert's exhibit 28 as opposed to the court's generalized order of an auction of "[t]he remaining articles of personal property, including all household items in the possession of each party"; (5) in failing to order that the bank accounts maintained for the son of the parties and their grandchildren be turned over to those for whom they were allegedly maintained; (6) in awarding Billie a proportional share of any increases in Robert's pension;

(7) in failing to have the pension money processed through the clerk of the district court instead of paid directly from the pension fund; and (8) in not labeling the pension payments as alimony.

## STANDARD OF REVIEW

In appeals involving actions for the dissolution of marriage, an appellate court's review is de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Larimore v. Larimore*, 240 Neb. 13, 480 N.W.2d 192 (1992). When the evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *Qualley v. Qualley*, 235 Neb. 841, 457 N.W.2d 812 (1990).

The division of property in dissolution cases is a matter initially entrusted to the discretion of the trial judge. *Larimore, supra; Qualley, supra.*

It has been recognized that the division of property is not subject to a precise mathematical formula. *Murrell v. Murrell*, 232 Neb. 247, 440 N.W.2d 237 (1989).

The ultimate test for division of marital property in connection with the dissolution of a marriage is one of reasonableness. *Mellor v. Mellor*, 235 Neb. 361, 455 N.W.2d 177 (1990). In our view, reasonableness in this case means an equal division of the marital estate, or as near thereto as the evidence allows.

## VALUE OF THE MARITAL HOME

Robert claims the home located at 4311 Ridgeway Road should have been valued at $80,000, since that is what he offered as its value and that is what he stated he would be willing to pay for it. The parties had agreed by stipulation to an appraiser, who fixed the home's value at $72,000. We use the appraiser's valuation of $72,000 for the marital home.

## MOTOR VEHICLE ACCIDENT PROCEEDS

Billie was involved in a motor vehicle accident in 1969, for which she received a net settlement of $7,500; in a second accident, in 1983, for which she received a net payment of

$1,000; and in a third accident, for which she received a net settlement of $25,000 in 1986. These accidents apparently all caused back injuries of various degrees, from which Billie claims to still suffer.

In *Maricle v. Maricle*, 221 Neb. 552, 378 N.W.2d 855 (1985), the court considered whether the funds held in trust by a conservator should be part of the marital estate. The husband had received a $300,000 settlement from a truck collision that had left him permanently and totally disabled. The Supreme Court found that the proceeds from this settlement constituted the main asset of the marriage and the primary source of income of the parties. It was said that Nebraska is an equitable property jurisdiction and that many such jurisdictions consider personal injury settlements part of the marital estate, which settlements should be considered for division. In *Maricle*, the Nebraska Supreme Court stated:

> In the present case equity requires that the proceeds from the settlement of the damage actions be included in the marital estate. The proceeds were not acquired by gift or inheritance, *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982), nor were they assets held in a trust established by a third person, thereby rendering them not a part of the marital estate, *Essex v. Essex*, 195 Neb. 385, 238 N.W.2d 235 (1976).

221 Neb. at 554, 378 N.W.2d at 857.

Although the motor vehicle accident proceeds are not the primary source of income or the main asset of the marriage, we find that equity requires their inclusion to some extent in the marital estate. The totality of the evidence and the financial standing of the parties leads to the conclusion that Billie's philosophy was "what's mine is mine, and what's yours is ours." As a result, the bank accounts which Billie controlled grew to substantial sums, while Robert handled the living expenses of the parties and the two sons, as well as the education of Robert junior. For example, the Merrill Lynch Ready Assets account in the amount of $33,808.96 at the time of trial, which was set aside for Robert junior's education, was never touched, yet he completed both his undergraduate and law school education paid for by Robert. Robert should not be unduly penalized in

the division of property and money because he spent what he earned for the family, which apparently enabled the parties to maintain a good standard of living and engage in their hobby of collecting, while Billie avoided spending her settlement moneys and accumulated cash in the accounts she controlled. Additionally, to achieve the settlements, Robert was required to release all of his personal claims flowing from his wife's injuries. However, when we view the equities, we also recognize that it is Billie who must endure pain and suffering in the future. Undoubtedly, a substantial portion of the settlement funds were to compensate her for past as well as future pain and suffering. In our view, equity requires that a substantial portion of the personal injury settlements should be set off to Billie, but equity also requires that Robert still share to some extent in the settlements. Accordingly, we find that $11,166.67 of the total settlements should be set off to Billie and that the balance, or $22,333.33, should be included in the marital estate.

## BANK ACCOUNTS FOR ROBERT JUNIOR AND GRANDCHILDREN

We have previously identified accounts totaling $71,808.61 as money allegedly set aside for Robert junior and for Renee and Andrea Pearce, the grandchildren of the parties and the daughters of Tommy Pearce. Robert testified at trial that he wanted those moneys set aside for the parties for whom they were designated. On the other hand, Billie would not commit herself as to what should be done with this money, but repeatedly avoided a direct answer by saying that the court could do what was fair and pointing out that she had saved the money. The trial court ordered that all of these accounts be liquidated and divided equally between Robert and Billie.

We first turn to the Merrill Lynch Ready Assets Trust account, No. 063-681-51918-7, which is held in the name of Billie Jean Parker as custodian of Robert J. Parker, Jr., under the Nebraska Uniform Gifts to Minors Act. That act, Neb. Rev. Stat. §§ 43-2201 through 43-2210 (Reissue 1988), involves gifts by an adult to a minor, with the gift coming into the possession and control of a designated custodian during the recipient's minority. This is often used as a tax-saving device to

shift the tax on savings from parents or grandparents to the minor, who is in a lesser tax bracket. However, the statute is very specific that a gift made under the act "is irrevocable and conveys to the minor indefeasibly vested legal title to the security, life insurance policy, annuity contract, or money given . . . ." See § 43-2204. To the extent that the property which has been gifted is not expended, the custodian is obligated to deliver it or pay it over to the minor upon his or her attaining the age of 19. See § 43-2205(4).

At the time of trial, Robert junior was 26 years of age and testified that he has filed his own separate income tax return for the past several years, on which he reports the income from this money. Given Robert junior's age and the plain language of the Uniform Gifts to Minors Act, it is clear that the money in this Merrill Lynch account is not marital property. Thus, the district court should not have attempted to exercise control over it by ordering the parties to this divorce to liquidate it by dividing it between them. Accordingly, we vacate that portion of the decree and hold that the account is not property to be considered or divided in this dissolution proceeding.

Billie has maintained the Heritage Federal savings account No. 10044952-6 for Robert junior, and at the time of trial, the amount therein was approximately $2,161.57. Billie has also maintained account No. 1004953-4 at First Federal Savings, which she says is for her granddaughter Andrea, with a balance at the time of trial of $2,758.18. A like account at First Federal Savings, No. 1007180-2 was maintained for her granddaughter Renee, with a balance at the time of trial of $2,701.62. The evidence does not prove the precise names in which these two accounts are maintained or titled. There is a certificate of deposit under account No. 853557-8 maintained for Renee by Billie as trustee, with a balance at the time of trial of $18,000. Finally, there is a money market certificate No. 850122-4 in the name of Billie as trustee for Andrea, with a balance at the time of trial of $19,383.71. Robert junior testified that he has paid the income tax due on the earnings from the above-recited Heritage Federal savings account. Billie testified that she paid the taxes on all of the savings for the two granddaughters, even though they filed their own tax returns due to the amount of

income attributable to these accounts. However, Billie did testify as follows: "I have all the certificates and I have all the passbooks and I would be happy to turn them over to whoever, because I have worked very hard to maintain these and to keep them up to date and transfer them from place to place."

We find this testimony to be determinative. Under Nebraska law, in order to make a valid and effective inter vivos gift, there must be an intention to transfer title of the property, a delivery by the donor, and acceptance by the donee. *In re Estate of Saathoff*, 206 Neb. 793, 295 N.W.2d 290 (1980). A valid gift of a bank deposit may be effected by depositing money in the name of the donee or in the name of the donor in trust for the donee, but in order to perfect such a gift, the donor must have intended a gift and must have completed it by delivery of the passbook or by performing some other acts divesting herself of dominion and control over the funds deposited. 38 C.J.S. *Gifts* § 49 (1943). This authority also states, "A mere deposit made by the depositor in his own name as trustee for another is insufficient to constitute a gift of the deposit inter vivos where the depositor exercised complete control during his life . . . ." *Id*. at 833.

Applying these principles to the Heritage Federal and First Federal Savings accounts for Robert junior, Renee, and Andrea, it is clear that a completed gift has not occurred. Billie made it clear that she has maintained the passbooks and certificates, transferred the funds, and managed the accounts according to her wishes. It is doubtful whether the requisite intention to make a gift of these funds was proven, but in any event, it is clear that she has never surrendered dominion or control. Accordingly, since these were not completed gifts, the money in the accounts is a marital asset, and the district court was correct in ordering these accounts divided between the parties. Therefore, the two First Federal Savings accounts for Renee and Andrea, as well as the Heritage Federal savings account for Robert junior, shall be divided equally between Robert and Billie. An equal division shall also be made of the Heritage Federal certificates of deposit Nos. 853557-8 and 850122-4. The equal division to be made of these five accounts or certificates of deposit shall include accumulation of interest, including all interest since the district court trial.

## ROBERT'S PENSION FUND

Robert assigns as error the trial court's award to Billie of 37.5 percent of his pension benefits, including a like percentage of any future increases or additions. Robert maintains that there was error in not labeling these payments alimony and in not having the payments processed through the clerk of the district court, as opposed to being paid directly from the pension fund.

Robert currently receives 75 percent of his gross pension benefit because he elected the survivor spouse annuity. The trial court ordered that Billie receive 37.5 percent, or one-half of the present gross pension benefit, as well as a similar percentage of any future additions or increases. Robert apparently wants the payments characterized as alimony so that Billie would have to show good cause, pursuant to Neb. Rev. Stat. § 42-368 (Reissue 1988), in order to be entitled to any future additions or increases.

Neb. Rev. Stat. § 42-366(8) (Reissue 1988) requires the court to "include as part of the marital estate, for purposes of the division of property at the time of dissolution, any pension plans, retirement plans . . . whether vested or not vested." Pension plans shall be included as part of the marital estate for purposes of division of property at the time of dissolution. *Kullbom v. Kullbom*, 209 Neb. 145, 306 N.W.2d 844 (1981). We believe that under § 42-366(8), a pension plan is properly included as a marital asset for purposes of property division at the time of the dissolution. *Polly v. Polly*, 1 Neb. App. 121, 487 N.W.2d 558 (1992). With regard to the pension fund, the trial court is correct, and Robert's assignments of error in this regard are without merit. Applying the same percentage to future increases as was utilized for present payments is logical and not an abuse of discretion.

## FURNITURE, ANTIQUES, COLLECTIBLES, AND PERSONAL PROPERTY

Robert and Billie have accumulated what appears to be the typical furniture, furnishings, appliances, dishes, utensils, bedding, linens, and other associated miscellanea of the average American household. The division of these items of personal property is considerably complicated by the Parkers' hobby of

buying and selling collectibles and antiques, of which a substantial number were either in "inventory" or being used by the parties at the time of their separation. When Robert moved out of the home, he took certain items of personal property with him. As a partial division of the antiques and collectibles, an auction was held prior to trial, which auction resulted in net proceeds after expenses of $42,541.06. That sum has been divided equally between the parties. In addition, the two sons, Tommy and Robert junior, assembled 286 sealed boxes of antiques and collectibles. In rotation, each party selected a box without knowing the contents, until the boxes were all divided. The parties had an understanding that they would each keep what they got as a result of the "blind draw." However, Robert claims his wife has received $5,000 worth of jewelry as well as various antiques, collectibles, and household goods with a value in excess of $42,145 which have not been fully accounted for and which are listed on the nine-page exhibit 28.

For her part, Billie produced exhibit 14, a duplicate of exhibit 28, on which she admitted by written notation that she had possession of the great majority of those items listed. The items have been in her possession at the residence, which she has occupied since the fall of 1989, when the parties separated. The district court's resolution of the personal property problems was to award possession of the items in the boxes to each party, without specifying or identifying those items, and to order all other items of personal property sold at auction under the supervision of the court. Presumably, this description of the "remaining articles of personal property" to be auctioned included not only typical household furniture and furnishings, but also antiques and collectibles which may well also be listed on exhibits 14 and 28.

Robert asserts that the trial court erred in not limiting the auction to those items on exhibit 28. We are being asked to conduct a "judicial garage sale" from afar, on the basis of a printed record of the testimony of the parties. We are not inclined to begin undertaking the supervision of the disposition of the personal effects of the parties in divorce actions. Nonetheless, we are faced with a district court order for an auction, which order we find overly broad and probably

incapable of effective and equitable enforcement. We read the district court's order for auction to include everything except the contents of the boxes. We find that this order is an abuse of discretion. Although there is no direct evidence on this precise matter, we believe it is reasonable to infer that the parties have unwrapped their boxes by now and that the contents are commingled with the personalty in each party's possession. Therefore, since neither knew what was in the other's surprise packages, there is a potential new controversy over whether a particular item was in one of the boxes and is thereby excluded from auction or whether it should be an auction item. This is an enforcement problem which is not likely to be easily or quickly resolved.

In addition to that potential controversy, it seems to us that the district court's order would require the collection of everything except the contents of the 286 boxes in some sort of central location so that the items could then be auctioned. We find it hard to believe that one of the parties would not accuse the other of "squirreling away nonboxed items" instead of bringing them to the central location for disposition by the auctioneer.

Accordingly, we vacate that portion of the district court's decree designated as "D. *PERSONAL PROPERTY, HOUSEHOLD GOODS, FURNITURE, FURNISHINGS AND PERSONAL EFFECTS*," which requires an auction. However, it is obvious that some solution must be devised to end this matter, and reluctantly, we undertake that task. Therefore, in place of the auction, we order that Billie, within 30 days of the issuance of the mandate in this case, shall gather together at 4311 Ridgeway Road all of those items on exhibit 14 which she designated with the letter "A" (symbolizing that they were available at the address where she resides). When the items are gathered together, the parties shall select one item (a set of four crystal glasses is four items, not one) in rotation until all items are selected. Billie shall choose first. Robert's selection of any item from exhibit 14 which was marked as available but which Billie cannot produce shall result in an immediate cash payment to Robert on the date of this "personal property draft" in an amount equal to 50 percent of the value listed on

exhibit 14 for that particular item. This proceeding shall be supervised by an attorney named by the district court to supervise this "personal property draft" as well as any payments required. The attorney's resolution of all disputes concerning this property shall be final. This "personal property draft" shall be completed within 30 days of the issuance of the mandate in this case. The appointed attorney shall be paid no more than $90 per hour, together with any necessary costs. The attorney fees and expenses shall be borne equally by Robert and Billie. The attorney's billing for time and expenses shall be submitted to the district court for approval, and the court shall order that each party pay 50 percent of the approved amount.

Other than as set forth herein with respect to those items on exhibit 14, each party is hereby awarded possession of all other items of clothing, personal property, household goods, furnishings, antiques, and collectibles now in their possession. Our reluctance to involve ourselves in the division of personal property is overcome by the recognition that we review this matter de novo, applying equitable powers, and that there is obviously a compelling need to achieve a final result, however imperfect it might be. However, the parties are free to file a joint stipulation with the district court within 10 days of the issuance of the mandate in this case, indicating complete resolution of all tangible personal property issues and jointly waiving the "personal property draft" ordered herein. If there is no such filing, our solution shall be implemented as set forth herein.

Finally, we hold that the evidence does not support Billie's claim that Robert has somehow taken possession of the items listed on her exhibit 12, nor does it support a finding that those items, if they exist, are worth $19,550, as she claims.

## BILLIE'S SEPARATE ESTATE

Billie claims that the following certificates of deposit or money market accounts are her separate property which should not be included in the marital estate: (1) First National Bank certificate of deposit No. 03079200326, valued at $40,000 at the time of trial; (2) Heritage Federal certificate of deposit No. 20260929, valued at $10,000 at the time of trial; and (3) Merrill

Lynch Ready Assets account No. 063-681-60394-0, valued at $31,641.33 at the time of trial. At paragraph K of the district court's order, those accounts were set aside as the sole property of Billie. We have already determined that two-thirds or $22,333.33 of Billie's personal injury claims should be included in the marital estate. The evidence established that those personal injury settlement proceeds are in the three accounts listed above.

Billie testified that these three accounts contain the inheritance from her parents. She testified that she had received $8,200 from the sale of her parents' farm and, prior to that, had received a yearly sum from the earnings of the farm. However, a lack of precision in some questions and in many answers in Billie's testimony causes us to be handicapped to a degree in our de novo review. She never testified to the amount of her yearly inheritance. Accordingly, we are left with Robert's testimony as the most precise evidence of the amount of Billie's inheritance. Robert testified that she received at least $13,000 from her inheritance.

Billie's testimony was that her inheritance was in these accounts she claimed as her sole property. As to the source of the rest of the $81,641.33 which she claims as her sole property, we find that she has not carried her burden of proof of establishing any of it as her sole and separate property except $13,000 by way of inheritance from her parents and her separate share of the personal injury settlements, which we have determined as $11,166.67. We briefly illustrate the lack of proof. In one instance in the bill of exceptions, Billie asserts that in addition to her inheritance and personal injury actions, the $81,641.33 represents, in part, savings from the Social Security and Veterans' Administration benefits which she received for her son Tommy, as a result of his father's death in an automobile accident. However, to our bewilderment, a mere 34 pages later she testifies that the VA and Social Security money ended up in Robert junior's Merrill Lynch account, which we have already said is not a marital asset, since under Nebraska law, it vested in Robert junior when he turned age 19.

Billie testified that she owned real estate in Little Rock, Arkansas, prior to her marriage to Robert and that there was

$6,500 of equity from that property which ended up in the family home at 4311 Ridgeway Road in Omaha, which equity is being awarded to her. Out of the $81,641.33 in accounts which Billie claims as her separate property, we find that the evidence and applicable law support only a finding of separate property in the amount of $30,666.67, which includes the $6,500 equity in the family home, the $13,000 inheritance, and the $11,166.67 from the personal injury settlements.

Accordingly, we vacate paragraph K of the district court's decree and hold that First National certificate of deposit No. 03079200326, Heritage Federal certificate of deposit No. 20260929, and Merrill Lynch Ready Assets account No. 063-681-60394-0 are marital assets and not the separate property of Billie.

## FINAL PROPERTY DIVISION

We believe that the most effective and efficient way to equalize the division of property and to give effect to the modifications which we have made in the district court's decree is simply to allow Billie to retain possession and control of the bank accounts formerly awarded to her as her sole and separate property under paragraph K of the district court's decree. Against those accounts, we then balance the marital estate by increasing the lien given to Robert on the real estate in paragraph B of the district court's decree, which lien was formerly in the amount of $20,000. Paragraph B of the decree is therefore modified to provide that Billie shall be awarded all right, title, and interest to the family residence located at 4311 Ridgeway Road in Omaha, Nebraska, and legally described in the district court's decree as "Irregular Lot 2, Block 6, Sunny Slope 3rd Addition, an addition to the City of Omaha, as surveyed, platted and recorded in Douglas County, Nebraska," subject to any outstanding indebtedness, if any there be, and, in addition, subject to a lien in the amount of $51,083.75 in favor of Robert. Said lien shall draw simple interest from April 30, 1990, when the decree was originally entered, at the rate of 6 percent per annum until paid, and it shall be payable to Robert on or before July 31, 1992. Accordingly, the division of the marital estate after our modifications is as follows:

|                                                    | Billie        | Robert        |
|----------------------------------------------------|---------------|---------------|
| House (net of lien)                                | $ 20,916.25   |               |
| First National CD No. 03079200326                  | 40,000.00     |               |

(includes separate property of $6,500 in Arkansas real estate, $13,000 inheritance, and $11,166.67 from personal injury settlements)

|                                                    | Billie        | Robert        |
|----------------------------------------------------|---------------|---------------|
| Heritage Federal CD No. 20260929                   | 10,000.00     |               |
| Merrill Lynch Ready Assets account No. 063-681-60394-0 | 31,641.33 |               |
| Lien on house                                      |               | $ 51,083.75   |
| 1982 Chevrolet Caprice                             | 2,675.00      |               |
| 1986 Mercury Marquis                               |               | 4,500.00      |
| 1982 Ford van                                      |               | 2,875.00      |
| 1987 tandem-wheel trailer                          |               | 1,750.00      |
| 1973 Ranger boat                                   |               | 1,000.00      |
| Vacation lot in Blue Eye, Missouri                 |               | 8,000.00      |
| Graphic Scanning and Xenex stock                   |               | 4,868.61      |
| Jewelry                                            | 5,350.00      |               |
| Antique auction                                    | 21,270.53     | 21,270.53     |
| Bank accounts (Robert junior and grandchildren)    | 22,502.54     | 22,502.54     |
| Heritage Federal IRA No. 20260937                  | 9,251.88      |               |
| Heritage Federal IRA No. 20163991                  |               | 10,000.00     |
| FirsTier checking No. 045455                       |               | 5,090.43      |
| 143 boxes in "blind draw"                          | equal         | equal         |
| Household goods and furnishings                    | equal         | equal         |

| Auction to be held (exhibit 14 items) | equal | equal |
|---|---|---|
| | $163,607.53 | |
| Billie's separate property | - 30,666.67 | |
| Total | $132,940.86 | $132,940.86 |

## SUMMARY

The decree of the district court for Douglas County dated April 30, 1990, is affirmed in all respects except as modified herein. The modifications we have made are summarized as follows:

1. Billie's separate property from her inheritance is $13,000; her separate property from her automobile accident settlements is $11,166.67; and her separate property from the real estate which she owned in Arkansas prior to this marriage is $6,500. Therefore, we find the evidence establishes a total separate estate of Billie in the amount of $30,666.67.

2. Robert's lien against the home at 4311 Ridgeway Road in Omaha, which was awarded to Billie, is increased from $20,000 to $51,083.75, and the due date of that lien is changed from March 19, 1992, to July 31, 1992.

3. The Merrill Lynch Ready Assets account No. 063-681-51918-7 in the name of Billie Jean Parker as custodian of Robert J. Parker, Jr., under the Nebraska Uniform Gifts to Minors Act is not part of the marital estate, and thus, it is not considered in the division of property. The district court's order to divide this account equally between Robert and Billie is hereby vacated.

4. The auction requirement in paragraph D of the decree is vacated, and instead, there shall be the selection of property from exhibit 14 or the payment for missing items. The selection of property shall be held under supervision, as set forth in the section of this opinion entitled "Furniture, Antiques, Collectibles, and Personal Property."

## ATTORNEY FEES

The district court ordered each party to pay their own fees and costs. No attorney fees are awarded in this court for this

appeal; however, costs are taxed to Billie.

AFFIRMED IN PART, AFFIRMED IN PART AS MODIFIED, AND REMANDED WITH DIRECTIONS.