Argued and submitted December 17, 1982, affirmed as modified July 6, 1983

# In the Matter of the Marriage of

## TIBBLES,
*Respondent,*

*and*

## TIBBLES,
*Appellant.*

### (44936; CA A24561)

665 P2d 1267

James M. Gillis, Newport, argued the cause and filed reply brief for appellant. With him on the brief was Litchfield, MacPherson, Carstens & Gillis, Newport.

S. David Eves, Corvallis, argued the cause and filed the brief for respondent. With him on the brief was Ringo, Walton & Eves, P. C., Corvallis.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Wife appeals from a decree of dissolution. The decree awarded custody of two children, ages 14 and 10, to wife and required husband to pay child support of $170 per month for each child and spousal support of $100 per month for a period of two years. The residence was awarded to wife. Husband was awarded a judgment lien against the house for $7,500, with interest, to be paid when the youngest child reaches 18 or when wife moves from the residence. He was also awarded his expected inheritance of $5,000 from his father's estate, which was still in probate at the time of the decree, and his vested but unmatured pension of undetermined value from his employment at Georgia-Pacific. Husband was made responsible for several debts, and wife was held responsible for the mortgage payments on the house. Personal property was divided between the parties.

Wife claims here that the trial court mistakenly refused to consider husband's military disability payments in setting spousal support and in dividing the marital estate. Had they been considered, she claims, she should have been awarded permanent spousal support of $300 per month, the residence free and clear of any judgment in favor of husband and husband's $5,000 inheritance. We agree that it was error to refuse to consider the disability pension for any purpose and, therefore, modify the decree.

The parties were married for 15 years. Husband's age is 36, wife is 33. Husband has worked for nine years at a Georgia-Pacific paper mill and takes home $765 a month after deductions, which include $220 to repay a loan of $4,050; his gross earnings for 1981 from his employment were $20,149. He is a high school graduate. He also moonlights at car repair, earning $20-$30 per month by his account and $80-$100 per month by his wife's. Husband lost the fingers of his right hand while he was in military service and receives a disability award from the Veterans' Administration of $593 per month. The record contains no evidence of the present value of his vested but unmatured pension from Georgia-Pacific.[1]

---

[1] No issue is raised in this appeal about the pension. *But see Palmerton and Palmerton,* 56 Or Ap 105, 641 P2d 81 (1982), 63 Or App 701, 666 P2d 285 (1983).

Wife has worked for short periods at a variety of low-paying jobs. Her net income at the time of the trial, from part-time work at a rest home, was less than $400 per month; the gross earnings were about $100 per week. She has a G.E.D. certificate and took a 6-week course in key-punch operation but could not find work in that field.

■　　We disagree with wife's contention that the present value of the sum of all the disability payments that husband expects to receive over his lifetime should be calculated and considered in dividing the marital property. Under *McCarty v. McCarty,* 453 US 210, 101 S Ct 2728, 69 L Ed 2d 589 (1981), military retirement pensions could not be divided in dissolution proceedings. Since that time, as we noted in *Smedley and Smedley,* 60 Or App 249, 653 P2d 267 (1982), Congress has enacted the "Uniformed Services Former Spouses' Protection Act." It allows courts to treat military retirement pay as "property of the member and his spouse in accordance with the law of the jurisdiction of such court." Public Law 97-252, Sec. 1002(a), amending 10 USC § 1408(c)(1). The law went into effect on February 1, 1983. Although we could, we believe, treat husband's disability pension the same as a retirement pension, we decline to award wife a share of it or to offset it against a greater award of other marital assets to wife.

■　　That is not to say that husband's disability payments will not be considered in setting spousal support. His disability award is indirect compensation to wife, because, were it not for husband's diminished earning capacity, for which the disability pension serves to compensate, wife, presumably, would have enjoyed the benefit of his greater earnings. We must consider the "financial conditions, resources and property rights" of the parties in setting spousal support. ORS 107.105(1)(c)(E). By the terms of the decree, wife, who earns $400 per month, receives $100 spousal support and makes mortgage payments of $218, leaving her a net monthly income, excluding the amount she receives as child support, of $282. Husband who earns about $800 monthly take home pay and receives disability payments of $593, is required by the decree to pay total support of $440 and pay debts totalling about $6,900. Assuming that he continues to make payments on the debt of $220 monthly (an amount equal to wife's monthly payment), he is left with approximately $730 per month in net monthly income. We therefore modify the spousal support

award to $225 per month in order more closely to equalize the parties' disposable income.

■ Taking into consideration the length of the marriage, the age of the parties, their relative earning capacities and job histories and the fact that wife's financial obligations will take longer to pay than will husband's, together with wife's lack of any job seniority or valuable job training, we also modify the decree to extend the period of spousal support to eight years from the date of the original decree. *See Cross and Cross,* 45 Or App 695, 609 P2d 405 (1980).

Decree modified to award wife spousal support of $225 per month for eight years from the date of the original decree; affirmed as modified. Costs to wife.