BARBARA A. SULLIVAN, APPELLANT, V. DALE E. SULLIVAN, APPELLEE.

388 N.W.2d 516

Filed June 20, 1986.    No. 85-847.

Philip T. Morgan of Morgan & Morgan, for appellant.

Gwyer Grimminger of Grimminger Law Office, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ.

PER CURIAM.

Barbara A. Sullivan questions the decree of the district court for Nance County, concerning the division of property and child custody determined in dissolution proceedings regarding Barbara's marriage to Dale E. Sullivan.

Barbara and Dale Sullivan married in 1956, had four children, including a son, Dennis, and engaged in farming operations. As a farm family, Sullivans operated their farm on a rented half section from 1956 to 1968. In 1969 Sullivans bought a 240-acre tract, the "Pelican place," for $68,000 on a 20-year contract. The Pelican place consisted of a quarter section of irrigated ground and 80 acres of pasture. The Sullivan farmstead was located on the Pelican place.

Dale's parents in 1973 gave Barbara and Dale, as joint

tenants, 400 acres, that is, 80 irrigated acres and 320 acres of dry cropland. In 1975 Barbara's father gave Barbara and her brother, as joint tenants, 260 acres of farmland.

In 1980 Sullivans experienced difficulties regarding their farming operations and an increasing debt owed the State Bank of Palmer. Dale and Barbara had jointly obligated themselves by promissory notes to the State Bank of Palmer. When Dale would not sell farm machinery and livestock for funds to apply on the bank debt and declined to lease Sullivans' farmland to third parties, Barbara refused to participate in any additional loan from the State Bank of Palmer and obtained employment in town to supplement her family's income. Without Barbara's participation, the bank continued to make farm loans to Dale.

Barbara's income included an average of $600 per month from her employment and $5,000 per year from the farm owned jointly with her brother. Barbara placed all her income in an account which she used for the family's clothing, groceries, and other necessaries.

At a farm sale in 1984, Sullivans' machinery brought between $40,000 to $50,000, while Sullivans' cattle brought between $50,000 to $60,000. After applying sale proceeds to the debt owed the State Bank of Palmer, that debt was $319,336, which included principal of $283,686. Sullivans rented out their farm ground and assigned the lessors' share of the 1984 crop to the Palmer bank. Dale became a truckdriver and earned $1,200 per month. Barbara moved from the Sullivan home and lived in a house on the land she and her brother had received from their father.

In November 1984 Barbara filed a petition for dissolution, seeking custody of Dennis, age 11, and a division of property. When the case was tried in September 1985, Barbara testified that the unpaid balance on the purchase of the Pelican place was $10,200 and that she worked in the family farm operations, such as hauling corn, while she continued her employment in town. Barbara further testified that in 1980, when she refused to participate in any further farm loans, Sullivans' indebtedness to the Palmer bank was $90,000. Barbara acknowledged that she had signed "certain notes" to the State Bank of Palmer. However, the instruments, dates, and amounts

for those promissory notes do not appear in the record. Dale testified that Sullivans' farm debt was $9,000 in 1973, when his parents gave Barbara and Dale the 400-acre tract, but that debt had increased to $150,000 in 1980, at the time Barbara refused to participate in any further bank loans pertaining to the Sullivan farm. Dale also testified that Dennis liked living on the Pelican place and wanted to continue attendance at his present school.

An officer of the State Bank of Palmer testified that the bank had no mortgage on the Pelican place and no interest in the land owned by Barbara and her brother. The 400-acre tract, the gift from Dale's parents, was mortgaged as security for the farm loans to Dale and had a value of $160,000. Although the record does not contain any documentary evidence concerning a mortgage to State Bank of Palmer, testimony substantiates existence of such mortgage, but the date when such mortgage was signed, its terms, and the identity of the mortgagor(s) are not reflected in the record. (The record does not contain any exhibit.) The Pelican place had a value of $168,000.

The district court determined that the balance of the debt owed to the State Bank of Palmer was $256,000. In dividing property of the parties, the district court awarded Barbara the one-half interest in the land owned jointly with her brother and also awarded Barbara a one-half interest in the Pelican place, but ordered Barbara to pay one-half of the debt owed the Palmer bank, $128,000. The court further ordered that Barbara pay one-half of the balance of the purchase price for the Pelican place. To Dale the district court awarded the entire 400-acre tract and a one-half interest in the Pelican place. The court ordered Dale to pay one-half of the bank debt, that is, $128,000, and one-half of the balance owed on the purchase price for the Pelican place. The court also ordered Dale to pay all other outstanding debts of the parties. Finally, subject to joint custody of both parties, physical custody of Dennis was placed in Dale.

Barbara contends the district court erred in three areas: (1) In placing custody of Dennis with Dale; (2) In giving Dale an undivided one-half interest in the Pelican place; and (3) In allocating to Barbara one-half of the debt incurred in operating

the 400-acre tract, while awarding all that tract to Dale.

Taking first Barbara's assignment of error regarding custody of Dennis, upon our de novo review of the record, we find no abuse of discretion on the part of the district court. A determination of child custody is a matter initially entrusted to the sound discretion of a trial judge, which determination, on appeal, will be affirmed in the absence of an abuse of discretion on the part of the trial court. See *Grace v. Grace*, 221 Neb. 695, 380 N.W.2d 280 (1986). The trial court's placement of custody is affirmed.

In considering Barbara's assignment of error regarding the district court's division of the Pelican place, we must first determine the extent of Sullivans' marital estate. The district court included in the marital estate that real estate owned jointly by Barbara and her brother, property which was a gift from their father. In *Grace v. Grace, supra* at 699, 380 N.W.2d at 284, we stated: " '[W]hen awarding property in a dissolution of marriage, property acquired by one of the parties through gift or inheritance ordinarily is set off to the individual receiving the inheritance or gift and is not considered a part of the marital estate.' " An exception to the foregoing general rule is recognized where both spouses have contributed to improvements or operation of the property received by inheritance or gift during the term of the marriage, or where a spouse, not owning the property prior to marriage or receiving the inheritance or gift, has significantly cared for such property during the marriage. See *Grace v. Grace, supra*.

In the case before us there was no evidence indicating that Dale either contributed to improvement or operation of Barbara's property owned jointly with her brother or that Dale had significantly cared for the property during his marriage to Barbara. The record is silent regarding any involvement by Dale in the care of Barbara's jointly owned farmland or the farm operations conducted on that property. In *Grace v. Grace, supra*, we reaffirmed the principles set forth in *Matlock v. Matlock*, 205 Neb. 357, 359, 287 N.W.2d 690, 691 (1980): "How property, inherited by a party before or during the marriage, will be considered in determining division of property or award of alimony must depend upon the facts of

the particular case and the equities involved." Under the circumstances, the district court abused its discretion in including Barbara's joint tenancy property in Sullivans' marital estate. Therefore, Barbara's real estate, owned jointly with her brother, is set over to Barbara and excluded from Sullivans' marital property. See *Guggenmos v. Guggenmos*, 218 Neb. 746, 359 N.W.2d 87 (1984) (division of property in marriage dissolution cases is a matter initially entrusted to the sound discretion of the trial judge and, on a de novo review of the record, will be affirmed by the Supreme Court in the absence of an abuse of discretion on the part of the district court).

Removal of Barbara's jointly owned property from Sullivans' marital estate leads us to the district court's division of Sullivans' marital property.

Neb. Rev. Stat. § 42-365 (Reissue 1984) provides:

> When dissolution of a marriage is decreed, the court may order . . . division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . .
>
> . . . The purpose of a property division is to distribute the marital assets equitably between the parties. . . .

There is no question that the Pelican place is an item included within Sullivans' marital property. From the record before us, we have no way of determining that Dale's parents did not intend the 400-acre tract to be a gift to both parties. The 400-acre tract was properly included in the marital estate, as well. See *Van Newkirk v. Van Newkirk*, 212 Neb. 730, 325 N.W.2d 832 (1982). Moreover, the record discloses that Barbara materially assisted the family farming operations conducted on the property received from Dale's parents.

Using a value of $168,000 for the Pelican place and a value of $160,000 for the 400-acre tract which Dale and Barbara received from Dale's parents, the marital estate had a value of

$328,000. By awarding one-half of the Pelican place and the entire 400-acre tract to Dale, the district court awarded approximately 74 percent of the marital estate to Dale and 26 percent to Barbara.

Recently, in *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986), we acknowledged the general rule for a division of marital property, that is, awarding a spouse one-third to one-half of the marital property, but also recognized that a division of property is not subject to a precise mathematical formula. Rather, an appropriate division of marital property must turn on reasonableness and the circumstances of each particular case in the light of the factors set forth in § 42-365. The "one-third to one-half" rule in dividing marital property "is of particular significance when 'the marriage is of long duration and the parties are the parents of all the children involved.' " *Taylor v. Taylor, supra* at 733, 386 N.W.2d at 859-60.

In an analysis of the factors set forth in § 42-365, Barbara and Dale were married for 29 years, had four children, and mutually contributed significantly to the family farm operations, which grew from a rented farm in 1968 to 640 acres of farmland owned in 1973. By her employment and income from her farmland outside the marital estate, Barbara supplemented the family income used for necessaries. When we consider the factors found in § 42-365, and exclude from Sullivans' marital property Barbara's interest in the real estate owned jointly with her brother, we find that the district court's division of marital property is an abuse of discretion and, therefore, must be modified to achieve an equitable division of marital property. For this reason we modify the district court's division of marital property and make the following division: Barbara and Dale each shall receive a one-half interest in the Pelican place and the 400-acre tract given to Dale and Barbara by Dale's parents.

However, such division of marital property necessitates a revision in the allocation of debts. "The debts of the parties are facts and circumstances to be considered in the property division." *Choat v. Choat*, 218 Neb. 875, 878, 359 N.W.2d 810, 813 (1984). In *Black v. Black*, 221 Neb. 533, 536, 378 N.W.2d

849, 851 (1985), we stated that the "net marital estate" must be divided and that the "debts of the parties should be considered in making a property division." As expressed in 24 Am. Jur. 2d *Divorce and Separation* § 935 at 923 (1983):

[I]f assets are to be divided between the parties, debts incurred in obtaining those assets should also be allocated between the parties. On the other hand, it has been held not to be an abuse of judicial discretion to divide the assets of the parties equitably without requiring them to share the debts.

There is a conflict of evidence regarding the balance of the indebtedness in 1980 to the State Bank of Palmer, when Barbara refused to participate in any further bank loans. The district court determined that the debt owed to the Palmer bank in 1985 was $256,000 and allocated one-half of that debt to each of the parties. Although the debt to the Palmer bank was not incurred in obtaining or acquiring assets by the Sullivans, nevertheless we believe that an equitable consideration requires an allocation of that debt between Dale and Barbara. We find that the balance of the indebtedness owed by the Sullivans to the bank in 1980 was $90,000. Any debt owed to the Palmer bank beyond $90,000 resulted from the bank's continued loans to Dale after Barbara refused to participate in any bank loan after 1980. We modify the allocation of debt owed to the State Bank of Palmer. Equity requires that Barbara bear one-half of the $90,000 debt owed to the State Bank of Palmer in 1980. Therefore, one-half of that bank debt, that is, $45,000, is allocated to Barbara as her responsibility for payment, and one-half of that 1980 bank debt is allocated to Dale for payment. Any debt owed to the State Bank of Palmer in excess of $90,000 is the sole responsibility of Dale for payment. We agree with the district court that the balance of the debt on the purchase price for the Pelican place should be borne equally by Dale and Barbara. Dale is responsible for all other debts as decreed by the district court.

The decree of the district court, as modified, is affirmed.

AFFIRMED AS MODIFIED.