JEANINE K. STUCZYNSKI, APPELLEE, V. JAMES E. STUCZYNSKI,
APPELLANT.
471 N.W.2d 122

Filed June 14, 1991.    No. 89-081.

John W. Kocourek, of Peterson Law Offices, for appellant.

Paul R. Elofson, of Abrahams, Kaslow & Cassman, for appellee.

HASTINGS, C.J., WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ., and COLWELL, D.J., Retired.

 

GRANT, J.

This is an action for dissolution of marriage. The parties agreed on a property settlement regarding the disposition of most of their marital assets and the debts accumulated during the marriage. They further agreed that custody of their two minor sons should be awarded to petitioner-appellee wife subject to reasonable rights of visitation in respondent-appellant husband. The district court found that this agreement was fair and reasonable and incorporated the terms of the agreement into the decree.

Pursuant to the property settlement agreement, the wife was awarded the marital home subject to the debt thereon. The house is to be sold upon the wife's remarriage or when the youngest child reaches majority. After the residence is sold, the husband will receive $11,250, which was agreed to be his equity interest in the real estate and personal property. The parties allocated their personal property, divided the husband's pension, and awarded each party a vehicle subject to the debt thereon. The husband agreed to liquidate certain cash value life insurance policies to provide a fund to discharge several thousand dollars of outstanding debt of the parties. The remainder was divided one-half to each.

The only issue not settled by the agreement of the parties was with regard to the amounts of alimony and child support. The district court ordered the husband to pay alimony of $350 per month for a period of 7 years and child support of $350 per month per child. The husband has appealed and assigns 12 errors, which may be summarized as contentions that the trial court erred in (1) "[t]aking into consideration Respondent's second job in making its award of alimony and child support" and (2) "[f]ailing to take into consideration the earning *capacity* of the petitioner which should be based upon a 40 hour work week, and not the 32 hours she was actually employed."

In connection with the first summarized assignment, two issues must be decided in our review. The first is the issue of considering the earnings of the second job the husband works. The second issue is implicit in the presentations of both parties. The husband, in his evidence on the issue of support, assumes that only his basic salary, not including overtime wages, should

be considered his total earnings. The wife, on the same issue, wants to include in the husband's total earnings the entire amount of overtime earned by the husband in 1987, which was the last full year of earnings before the trial in September 1988. We determine those two issues herein and modify the judgment of the trial court with regard to the husband's first summarized assignment of error. We affirm the judgment of the trial court on the second assignment. The remainder of the specific assignments of error need not be specifically addressed, with the exception that we note appellant is in error when he states that he "timely" filed his "Motion to Reconsider and Motion for Specific Findings of Fact and Conclusions of Law . . . ." Brief for appellant at 4. We have considered the motion to reconsider as a motion for new trial. In a case tried to the court without a jury, a motion for specific findings of fact pursuant to Neb. Rev. Stat. § 25-1127 (Reissue 1989) must be made before the final submission of the case to the court. *State, ex rel. Sorensen, v. Mitchell Irrigation District*, 129 Neb. 586, 262 N.W. 543 (1935). Appellant's assignment of error in this regard has no merit.

In appeals involving actions for dissolution of marriage, the Supreme Court's review is de novo on the record to determine whether there has been an abuse of discretion by the trial judge, whose judgment will be upheld in the absence of an abuse of discretion. When the evidence is in conflict, the Supreme Court considers, and may give weight to, the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *LaBenz v. LaBenz*, 237 Neb. 231, 465 N.W.2d 726 (1991); *Von Tersch v. Von Tersch*, 235 Neb. 263, 455 N.W.2d 130 (1990).

The record shows that the parties were married on February 24, 1973. At the time of trial, the wife was 34 years old and the husband was 36 years old. Throughout the marriage, the husband was employed as a maintenance mechanic at ConAgra, Inc., and the wife worked as a homemaker. The couple's sons were born on November 30, 1973, and November 24, 1976.

The husband left the home in the summer of 1987, but continued to support his family, contributing approximately

$1,600 per month to the wife for her and the children's household expenses during the time between the filing of the petition herein and the trial. The petition for dissolution was filed on July 8, 1987, and the decree was entered on November 28, 1988. The record before us does not set out any temporary support order.

In the fall of 1987, the wife borrowed approximately $5,000 in student loans, enrolled in a 9-month program at the Omaha College of Health Careers, and completed her medical assistant training in May 1988. In June 1988, she began working 32 hours per week at a doctor's office, earning $5 per hour with no employment benefits.

In November 1987, the husband secured a part-time position at Omaha Processors, Inc., in addition to his regular job at ConAgra. He testified that he generally worked 40 hours per week at ConAgra, plus 8 hours per month overtime at ConAgra, and worked 30 hours per week at Omaha Processors. The husband testified that he got the second job "[t]o take care of the responsibilities from the house that I just left and to enable Jeanine [petitioner] to acquire employment or schooling to get employment." The husband further testified that he did not want to continue working 70 hours per week. In 1987, the husband earned net wages of $27,796 (including a federal tax refund of $4,513) from ConAgra, and net wages of $1,774 from Omaha Processors. The court also considered evidence of the husband's projected earnings for 1988 and the parties' income tax returns for 1985, 1986, and 1987.

Based on the foregoing, the district court found that

the petitioner has the approximate take home pay of $515 per month based upon her current employment of approximately 32 hours per week, with expenses of $1,500, including a student loan [payment] of approximately $100. The Court finds that the respondent has current net income of approximately $2,100, *based upon employment from two positions*, and that he has reasonable monthly expenses of approximately $880.

(Emphasis supplied.)

On appeal, the husband contends that the award of alimony and child support constituted an abuse of discretion because it

equals 75 percent of his income from ConAgra and the court based the award on his working 70 hours per week. Thus, he claims, he will be forced to work 70 hours per week for the next 7 years and is "in effect reduced to a form of bondage or involuntary servitude to his former wife from which he cannot escape." Brief for appellant at 13.

We first consider appellant's first summarized error, concerning his second job, and determine there is merit in the husband's contention that the court should not have considered income from his second job in setting child support and alimony payments. In this connection, we agree with the holding in *Naquin v. Naquin*, 405 So. 2d 1171, 1172 (La. App. 1981), where the court stated:

> The wife contends that the husband was obligated to work at a second job during his seven days off. We know of no jurisprudence requiring the party obligated to furnish child support to undertake two separate employments. We note that offshore work with seven days on and seven days off is considered a full time job.

We hold a party obligated to furnish child support is not required to undertake two separate employments when the party has one full-time job. A spouse with a full-time job, which job also furnishes substantial overtime, may not be required to work at a second job to furnish child support. If the earnings in such a second job are included in the calculation of the amount of child support due from the worker, the next result is a court requirement that the worker continue indefinitely at these two jobs to satisfy the court order.

It is true that the Nebraska Child Support Guidelines, effective October 1, 1987, and thus in effect at the time of the trial in this case, provided as a definition of "Total Monthly Income," "This is income of both parties derived from *all* sources . . . ." (Emphasis in original.) Those guidelines were promulgated by this court, pursuant to the direction of Neb. Rev. Stat. § 42-364.16 (Reissue 1988). That statute provides:

> The Supreme Court shall provide by court rule, as a rebuttable presumption, guidelines for the establishment of all child support obligations. Child support shall be established in accordance with such guidelines unless the

court finds that one or both parties have produced sufficient evidence to rebut the presumption that the application of the guidelines will result in a fair and equitable child support order.

The child support guidelines thus set out a rebuttable presumption. We find that the strict application of the then-effective guidelines in this case did not result "in a fair and equitable child support order."

A problem sometimes before the trial courts and this court is the parent who will not work to capacity to properly provide for the parent's children. That is not this case. The husband in this case apparently recognized his obligations and voluntarily took steps to meet those obligations. Apparently, he contributed $1,600 per month to the support of the wife he had left and their children during the most stressful time following his departure from the family. To satisfy the requirements of his family, he took a second job. He now says he is tired of working 70 hours a week. No worker should be required to work at such a rate for long periods of time, and it is not fair and equitable to require him to do so. Accordingly, we hold, in the case at issue, that the trial court abused its discretion in determining the husband's net income "based upon employment from two positions."

We turn then to a de novo calculation of the proper amount of respondent's income for the purpose of child support. The record shows that respondent typically worked more than 8 hours per month overtime at ConAgra over the course of his employment, as indicated by his testimony and income tax records. The husband's regular salary at ConAgra was $11.87 per hour for 40 hours per week. Thus his annual basic salary was $24,689. In 1985, he earned $7,545 in overtime wages; in 1986, $8,457; and in 1987, $10,743 in such overtime. At the trial herein, the husband offered his pay stub showing that by September 13, 1988, he had gross earnings of $21,251. That amount shows weekly earnings of $574, and therefore his estimated gross earnings in 1988 would be $29,848. This would mean that in 1988, the husband could reasonably be expected to earn $5,159 in overtime pay at ConAgra.

In presenting her figures as to the husband's earnings, the wife assumes both the earnings from two jobs and that the

earnings from the husband's ConAgra job would be equal to the husband's 1987 earnings. That figure, as set out above, included $10,743 in overtime salary. In contrast, in calculating his 1988 ConAgra earnings the husband submitted evidence based only on his basic ConAgra wage of $24,689.

Both parties choose to ignore the actual figures before them. Those figures, when extrapolated, show that in 1988 the husband could be expected to earn his basic salary plus $5,159 in overtime wages. As a result, the figures presented to the court on this issue were too high as presented by the wife and too low as presented by the husband. This difference may be the obvious result of the adversary system, but it might be noted that where numbers are concerned, a fair, impartial presentation may well be more effective than an adversarial approach.

This leads us to consideration of the second issue before us: How is overtime to be treated in the calculation of income for the purposes of child support calculations? We believe it is appropriate to consider overtime wages in setting child support and alimony payments if the overtime is a regular part of the employment and the employee can actually expect to earn regularly a certain amount of income for working overtime. See, *Lenz v. Wergin*, 408 N.W.2d 873 (Minn. App. 1987); *Strauch v. Strauch*, 401 N.W.2d 444 (Minn. App. 1987); *In re Marriage of Heinemann*, 309 N.W.2d 151 (Iowa App. 1981). A court's findings regarding the employee's level of income should not be based on the inclusion of income that is entirely speculative in nature and over which the employee has little or no control. In this case, the record shows that in 1988, the husband can reasonably expect to earn $5,159 annual overtime at ConAgra. Where the facts show that overtime in 1 year (1987 in this case) is much higher than in a current year, the high earnings may not be used. Since respondent husband's income may not include speculative income that the husband employee has no control over, it was an abuse of discretion for the trial court to consider the inapplicable high overtime income of 1987.

In our de novo review, we must reassess the husband's contribution under the child support guidelines. We first note

that the wife's projected income is understated in that the wife had had employment for only 13 weeks before the trial. During that brief time, she netted $1,674 as salary. The wife's evidence showed that sum divided by 7 to determine her biweekly pay, which was then used to determine her net monthly salary of $514. This figure is not correct. To determine biweekly wages over a 13-week period, the total should be divided by 6.5. The correct amount is $554 per month.

In calculating the husband's amount due, we have followed the husband's approach in exhibit 9, with the exception that we have used a total gross monthly income figure of $2,487 (one-twelfth of husband's projected income of $29,848, which amount includes $5,191 of overtime pay) rather than the $2,057 (one-twelfth of husband's basic annual salary, not counting overtime) used by the husband. We also used the tax deductions shown in the husband's exhibit 9, since no other figures are presented to us. These calculations result in a net monthly income to the husband, from ConAgra only, of $1,905. Using the child support guideline formula, the husband's share should be less than $600.

The husband testified he was willing to pay child support of $300 per month per child, but contends $350 per month per child is excessive.

Since the husband volunteered to pay $600 per month total child support, and the child support guidelines, on the figures presented to us, indicate that his child support payments should be somewhat less than $600 per month, we modify the child support to $300 per month per child. The Nebraska Child Support Guidelines in effect at the time the decree herein was entered did not specifically provide for the situation in which more than one child was involved. In our de novo review, we apply paragraph H of the current guidelines and further modify the support order to provide that respondent shall pay $600 per month total support through November 30, 1992. Beginning December 1, 1992, or on whatever earlier date it is shown to the trial court that the older child has become emancipated, marries, or dies, the husband is ordered to pay $390 per month for support for the younger child until that child becomes emancipated, becomes self-supporting, marries, or dies, or

until further order of the court.

Regarding the payment of alimony, Neb. Rev. Stat. § 42-365 (Reissue 1988) provides:

> When dissolution of a marriage is decreed, the court may order payment of such alimony by one party to the other and division of property as may be reasonable, having regard for the circumstances of the parties, duration of the marriage, a history of the contributions to the marriage by each party, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities, and the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. . . .

> While the criteria for reaching a reasonable division of property and a reasonable award of alimony may overlap, the two serve different purposes and are to be considered separately. . . . The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances and the other criteria enumerated in this section make it appropriate.

See, also, *Ritz v. Ritz*, 229 Neb. 859, 429 N.W.2d 707 (1988); *Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988).

In *Murrell v. Murrell*, 232 Neb. 247, 252, 440 N.W.2d 237, 241 (1989), we said that "[a] division of property and the awarding of alimony are not subject to a precise mathematical formula. Rather, an appropriate division of marital property and amount of alimony must turn on reasonableness and the circumstances of each particular case in light of the factors set forth in § 42-365." In determining whether alimony should be awarded, in what amount, and over what period of time, the ultimate criterion is one of reasonableness. *Id*. The court should consider what effect, if any, the marriage has had upon the ability of the supported spouse, if any, to secure employment in the future and should consider the earning capacity of the supporting spouse.

In this case, the wife had graduated from high school and was 19 years old when the parties were married in 1973. At that

time, the parties agreed that the wife would remain at home and take care of the children, and she did so for 15 years. After the separation, petitioner borrowed $5,625, completed an educational program, and now works 32 hours a week as a medical assistant. She earns $5 per hour, receives no employment benefits, and is responsible for the day-to-day care of two children.

The record shows that before the trial, the husband had worked hard, at two jobs, while his wife was attending school to help her obtain employment after she had been out of the job market a long time. It appears that the trial court considered the income from the husband's two jobs in setting the alimony at $350 per month. Under the circumstances, the district court abused its discretion in awarding alimony of $350 per month for a period of 7 years. We modify the alimony award to $300 per month for 7 years. That amount satisfies the husband's obligation in this regard.

With regard to the husband's contention that the trial court erred in determining the wife's monthly contribution on the basis of 32 hours per week, rather than 40, we determine the trial court did not err in its order in this connection. As stated above, the wife had just returned to the job market after a long absence. She testified that the 32-hour job was all she could find at that time in the area she had trained for. She had only worked 13 weeks at the time of trial, and she could hardly be expected to be more aggressive in searching for a better job in that length of time. The trial court did not err in this regard.

We do not award attorney fees in this appeal.

The judgment of the trial court, as modified herein, is affirmed.

AFFIRMED AS MODIFIED.