JEAN-DANIELE REICHERT, APPELLEE, V. RICKEY MURL REICHERT,
APPELLANT.

516 N.W.2d 600

Filed May 27, 1994.   No. S-92-979.

32

Carl I. Klekers for appellant.

Donald A. Roberts, of Lustgarten & Roberts, P.C., for appellee.

HASTINGS, C.J., BOSLAUGH, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

PER CURIAM.

Rickey Murl Reichert (husband) appeals from a decree of dissolution. We affirm as modified.

In 1972, the parties were married in Gibraltar. In 1992, Jean-Daniele Reichert (wife) filed a petition for dissolution of the marriage. No children were born of the marriage.

After a trial, the district court entered its decree of dissolution. By way of property division, the court awarded to husband a pickup truck and other personal property. The court awarded to wife a Jeep, other personal property, and the marital residence. In addition, the court awarded wife $335 per month from husband's military pension and $1,000 in insurance proceeds to repair the garage roof. The court evenly divided the savings account used by husband, 43 savings bonds, and husband's thrift savings account. As alimony, the court awarded wife $300 per month for 120 months. As attorney fees, the court awarded wife $500, in addition to the $250 attorney fees it had awarded in an earlier temporary order.

Husband appealed, and under our authority to regulate the caseloads of the appellate courts of this state, we removed the matter to this court. Husband alleges that the district court erred in awarding wife (1) an inequitable amount of the property, (2) alimony, and (3) attorney fees.

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.

*Pendleton v. Pendleton*, 242 Neb. 675, 496 N.W.2d 499 (1993); *McWha v. McWha*, 241 Neb. 355, 488 N.W.2d 357 (1992); *Stover v. Stover*, 240 Neb. 391, 482 N.W.2d 244 (1992). In conducting such de novo review, when evidence is in conflict, an appellate court considers, and may give weight to, the fact that the trial court heard and observed the witnesses and accepted one version of the facts rather than another. *McWha, supra; Stover, supra*. This standard of review applies to the trial court's determinations regarding division of property, alimony, and attorney fees. See, *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992) (property division, attorney fees); *Larimore v. Larimore*, 240 Neb. 13, 480 N.W.2d 192 (1992) (property division); *Ziebarth v. Ziebarth*, 238 Neb. 545, 471 N.W.2d 450 (1991) (alimony, attorney fees); *Murrell v. Murrell*, 232 Neb. 247, 440 N.W.2d 237 (1989) (alimony).

Husband first asserts that the trial court inequitably divided the property. Specifically, husband argues that the trial court erred in awarding wife one-half of his savings account, the $1,000 insurance check, and one-half of the 43 savings bonds because, he claims, those items do not exist.

There being no settlement agreement between the parties, the trial court was obliged to order an equitable division of the marital estate. Neb. Rev. Stat. § 42-366(8) (Reissue 1988). The marital estate includes property accumulated and acquired during the marriage through the joint efforts of the parties. See, *Grummert v. Grummert*, 195 Neb. 148, 237 N.W.2d 126 (1975); *Tavlin v. Tavlin*, 194 Neb. 98, 230 N.W.2d 108 (1975); *Jablonski v. Jablonski*, 173 Neb. 544, 114 N.W.2d 1 (1962). With some exceptions not relevant here, the marital estate does not include property acquired by one of the parties through gift or inheritance. See, *Preston, supra; Buche v. Buche*, 228 Neb. 624, 423 N.W.2d 488 (1988); *Sullivan v. Sullivan*, 223 Neb. 273, 388 N.W.2d 516 (1986).

In the present action, the marital estate indisputably includes the family residence, a pickup truck, a Jeep, a thrift savings account, husband's military pension, and assorted items of tangible personal property. The disputed items are a savings account, an insurance check, and some savings bonds. Husband's argument regarding these disputed items amounts to

a claim that the marital estate does not include these items. We address each disputed item in turn, reserving for the moment the question of whether the items were equitably divided.

The trial court awarded wife "one-half of the savings account used by [husband], which one-half equals $300.00." There is no evidence of such an account. The trial court erred in considering such a savings account as part of the marital estate and awarding a portion thereof to wife. The decree should be modified by striking out this award.

The trial court awarded wife "the $1,000.00 insurance check . . . but if the same is not in existence, [husband] shall pay to [wife] the sum of $1,000.00." Wife testified that the garage roof was damaged 2 years ago, that the damage was covered by insurance, and that the insurance company sent a check for approximately $1,000, which husband appropriated. Wife further testified that the damage has not been repaired. Husband did not dispute the existence of the check. Husband instead testified that he had repaired the garage roof several times and that he thought it no longer leaked.

The trial court clearly determined that the insurance check existed and was kept by the husband. The check was a part of the marital estate because it was property accumulated during the marriage through the parties' joint ownership of the house. The court did not err in considering the insurance check a part of the marital estate.

The trial court awarded wife "one-half of the value of the 43 savings bonds owned by the parties." Wife testified that, for 20 years, she and her husband regularly purchased savings bonds. On the list of assets which she entered into evidence, wife claimed 43 savings bonds with a total value of $4,300. When asked why she had listed 43 bonds, wife testified that those were the only ones she could find and that to her knowledge, they still exist. Husband testified that after he had been served with notice of the dissolution action, he had used a number of savings bonds to license and register the pickup truck; according to husband, there were only six or seven bonds left. Husband also testified that the type of bonds he purchased could not be cashed for 6 months, that their prematurity cash value was $50, and that their value upon maturity was $100.

The trial court clearly determined that 43 savings bonds existed. Because the testimony of husband and wife directly conflicted on this point, we choose to give weight to the fact that the trial court observed the witnesses and believed one version of the facts rather than another. Accordingly, the trial court did not err in including the 43 savings bonds as part of the marital estate. However, the trial court made no finding as to the value of the bonds. Because there was no evidence that any of the bonds had matured, we find that the bonds each had a value of $50. The decree should be modified to reflect this valuation.

Finally, husband's military pension remains to be addressed. It is undisputed that the military pension is included in the marital estate. See § 42-366(8). See, also, *Ray v. Ray*, 222 Neb. 324, 383 N.W.2d 752 (1986); *Rockwood v. Rockwood*, 219 Neb. 21, 360 N.W.2d 497 (1985); *Taylor v. Taylor*, 217 Neb. 409, 348 N.W.2d 887 (1984). The question is how much of the pension plan should be included. We have addressed this question only obliquely in *Hildebrand v. Hildebrand*, 239 Neb. 605, 477 N.W.2d 1 (1991).

In *Hildebrand*, the parties were married to each other twice. The first marriage was dissolved in Alaska. The second marriage was dissolved in Nebraska. During the second dissolution, the wife argued that she had a right to her husband's pension based on the total years of marriage. Rejecting this argument, we held that the wife's rights extended only to the portion of the pension earned during the second marriage. This holding was based on the fact that under Alaska law, which did not recognize military pensions as marital property, the portion of the pension earned during the first marriage became the sole property of the husband at the time of the first divorce.

Implicit in and consistent with the *Hildebrand* opinion is the notion that the marital estate includes only that portion of the pension which is earned during the marriage. A number of other courts have adopted this rule. See, e.g., *In re Marriage of Gallo*, 752 P.2d 47 (Colo. 1988); *In re Marriage of Parker*, 252 Ill. App. 3d 1015, 625 N.E.2d 237 (1993); *Urbick v. Urbick*, 474 N.W.2d 452 (Minn. App. 1991); *Olivo v. Olivo*, 82 N.Y.2d 202,

624 N.E.2d 151, 604 N.Y.S.2d 23 (1993); *Randol v. Randol*, 849 P.2d 1118 (Okla. App. 1993); *Noll v. Noll*, 297 S.C. 190, 375 S.E.2d 338 (S.C. App. 1988); *Banagan v. Banagan*, 437 S.E.2d 229 (Va. App. 1993); *Butcher v. Butcher*, 178 W. Va. 33, 357 S.E.2d 226 (1987). On consideration, we adopt the rule that the marital estate includes only that portion of a pension which is earned during the marriage.

Husband was in the military for 24 years. Husband and wife were married for 13 of those years. The marital estate thus includes thirteen twenty-fourths of husband's military pension.

Because the trial court chose to award wife a portion of husband's monthly pension income, rather than a lump sum, we must also calculate the portion of husband's monthly pension income which should be included in the marital estate. Husband's retiree account statement reflects that his gross monthly pension income is $1,259 and that after a deduction for federal income tax, three additional deductions are taken from this amount.

The first deduction is "VA Compensation." In explanation, husband testified that he is a disabled veteran, that the deducted amount is sent by the Veterans' Administration, and that the deducted amount is not taxable. Husband's explanation is less than complete. However, it appears that neither husband nor wife has any rights in the money represented by this deduction. The deducted amount, therefore, is not a part of the marital estate.

The second deduction is a "Survivor Benefit Plan Cost" of $81.84. Husband testified that this amount pays for a pension to be paid to his survivors upon his death. Husband also testified that he would stop paying for this benefit unless ordered to pay by the court. As such, we will not consider survivor benefit plan cost as a true deduction.

The third deduction is an "Allotment" of $75.44. Husband testified that this allotment pays for term life insurance on both himself and wife. Although we recognize that life insurance may be a worthwhile expense, the allotment constitutes no more than a direct payment from husband's pension account into his life insurance account. Accordingly, we will not consider the allotment as a true deduction.

Husband's gross pension income, less his federal income tax withholding and VA compensation payment, equals $1,086.88. The marital estate includes thirteen twenty-fourths of this amount, or $588.73. The decree awarded wife $335 per month from this pension—57 percent of the marital estate portion of the pension.

Having determined the contents of the marital estate, we must now examine the property awarded to each party and the value of that property. Although the parties' briefs present very different assessments of the total value of the property awarded to each, the record reflects that the parties did not dispute the value of any property other than the residence. We begin by outlining the property awarded to each party and the value of that property.

The trial court ordered the parties to equally divide the savings bonds and the thrift savings account. As discussed previously, the savings bonds are valued at $50 each, $2,150 total. The thrift account is valued at $24,893.63.

The trial court awarded husband the pickup truck and other personal property. Husband estimated the truck's value at $18,500, of which $2,000 is equity and $16,500 is debt. The court ordered that husband alone would be liable for this debt. Not all of the personal property awarded to husband was assigned a value. Those items for which values were assigned, including the items he took from the residence, some of the items specifically awarded him, and his guns, total $5,930. Those items for which no value was assigned include tools, sporting equipment, a gun cabinet, a Shop-Vac, a self-propelled lawnmower, garden tools, a collection of wine pitchers, cookbooks and technical books, animal skull mounts and tanned skins, luggage, and a potbellied stove.

The trial court awarded wife the Jeep, other personal property, $1,000 in insurance proceeds, a portion of husband's pension, and the marital residence. Wife estimated the Jeep's value at $8,900, of which $4,721.08 is equity and $4,178.92 is debt. The court ordered that wife alone would be responsible for this debt. Not all of the personal property awarded to wife was assigned a value. Those items for which a value was assigned, including the items which wife listed as remaining in

the residence and the additional items which husband listed as remaining in the residence, total $9,275. Items for which no value was given include ladders, kitchen utensils, and bronze cookware.

We now turn to the marital residence. Husband prepared an exhibit entitled "Major Assets and Liabilities of the Parties." That exhibit lists the value of the home as $55,000. The exhibit also lists $47,000 in encumbrances on the home. Wife prepared similar exhibits listing the parties' assets and liabilities. Wife listed the value of the home as $50,000. Wife testified that the house would have a value of $55,000 if the garage roof was repaired and the kitchen repainted. Wife listed $47,549 in encumbrances on the home.

The trial court made no findings regarding the value of the home or the extent of the encumbrances thereon. Since we find neither party's testimony more credible than the other, we have decided to split the difference. We find that the value of the home is $52,500, of which $5,225.50 is equity and $47,274.50 is debt. The trial court ordered that wife alone would be liable for this debt.

In summary, the parties' assets, not counting the pension, equal $54,195.22, and the parties' liabilities equal $67,953.42. The trial court's division of the property award wife 60 percent of the assets and 76 percent of the liabilities, husband 40 percent of the assets and 24 percent of the liabilities. Additionally, the trial court awarded wife 57 percent of the marital estate portion of husband's monthly pension.

Having outlined the property division, we may now address husband's contention that the property was inequitably divided. Though generally a division of one-third to one-half of the marital estate is appropriate, property divisions are not subject to any rigid mathematical formula. *Blaser v. Blaser*, 225 Neb. 104, 402 N.W.2d 875 (1987); *Sullivan v. Sullivan*, 223 Neb. 273, 388 N.W.2d 516 (1986). In determining the appropriateness of a division of marital property, the ultimate test is one of reasonableness. *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *Hildebrand v. Hildebrand*, 239 Neb. 605, 477 N.W.2d 1 (1991); *Mellor v. Mellor*, 235 Neb. 361, 455 N.W.2d 546 (1990). See Neb. Rev. Stat. § 42-365 (Reissue

1988).

Husband cites *Ritz v. Ritz*, 229 Neb. 859, 429 N.W.2d 707 (1988), for the proposition that when both parties to a dissolution have worked throughout the marriage and no children are involved, the property should be divided equally. In *Ritz*, the trial court awarded the husband a higher percentage of the marital estate than the wife. In calculating the amount awarded to each party, we were careful to use *net* values—the total assets awarded to each less the total liabilities awarded to each. We held that the trial court had divided the property—largely a working farm—in the only feasible manner. We required the husband to make a cash payment to the wife in order to equalize the property division.

In the present action, the property division left husband with more assets than debts, but left wife with more debts than assets. Husband received approximately $21,500 in assets and $16,500 in debts, for a net surplus of $5,000. Wife received approximately $33,700 in assets and $51,500 in debts, for a net deficiency of $17,800. If we were to strictly follow *Ritz*, as husband suggests, husband would be ordered to make a cash payment to wife, not vice versa. Rather than order a lump-sum payment, the trial court ordered husband to pay wife a portion of his pension each month. This order fulfills the requirements of, and does not conflict with, *Ritz*.

In dividing property upon a dissolution of marriage, a court should consider four factors: (1) the circumstances of the parties; (2) the duration of the marriage; (3) the history of contributions to the marriage, including contributions to the care and education of the children, and interruption of personal careers or educational opportunities; and (4) the ability of the supported party to engage in gainful employment without interfering with the interests of any minor children in the custody of such party. § 42-365.

The first factor we consider is the circumstances of the parties. At the time of trial, husband was 48 years old and wife was 46 years old. Husband testified that his health was "not great"; that he suffered from high blood pressure, diabetes, and gout; and that his teeth "are in bad shape." Wife testified that her health was "okay."

The next three factors we consider are the duration of the marriage, the contributions to the marriage, and the parties' ability to obtain gainful employment. We will consider these factors together.

In the present action, neither party brought significant assets to the marriage. Both parties were gainfully employed throughout the 20-year marriage and contributed their earnings to the marriage. Husband first served in the military and now is employed, in a civilian capacity, as a meteorologist at Offutt Air Force Base. Wife is a visual merchandiser—she decorates department stores—and is currently employed by Dillard's department stores.

Considering the factors outlined above, the division of the marital estate was reasonable. Both parties are approximately the same age, though husband is in somewhat poorer health. Both parties worked throughout the marriage and contributed their earnings to the marriage. The parties' net marital estate, not including the pension, is in the red. Wife received the lion's share of this deficiency. To compensate, she received a higher share of the marital estate portion of the pension than husband. We find that the trial court did not abuse its discretion in dividing the marital estate.

Husband next asserts that the trial court erred in awarding wife alimony of $300 per month for 10 years.

"The purpose of alimony is to provide for the continued maintenance or support of one party by the other when the relative economic circumstances . . . make it appropriate." § 42-365. Alimony should not be used to equalize the incomes of the parties or to punish one of the parties. *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *Kimbrough v. Kimbrough*, 228 Neb. 358, 422 N.W.2d 556 (1988).

In determining whether alimony should be awarded, a court should consider the same four factors used in determining a division of property. In addition to these four factors, a court determining alimony should also consider what effect, if any, the marriage had on the ability of the wife to secure gainful employment in the future and the earning capacity of the husband. See, *Preston, supra*; *Stuczynski v. Stuczynski*, 238 Neb. 368, 471 N.W.2d 122 (1991); *Kimbrough, supra*. As with a

division of property, the ultimate test is one of reasonableness. *Preston, supra*; *Stuczynski, supra*. See § 42-365.

We first consider the marriage's effect on wife's employability. Although wife is gainfully employed in her chosen field, the marriage has nonetheless affected her earning capacity. During the marriage, wife's career was often interrupted by the frequent moves necessitated by husband's service in the military. Wife lived first in Spain, then in Michigan, then in Switzerland, then in Illinois, then in Spain again, then in Germany, and then finally in Nebraska. Wife testified that these moves prevented her from building up any significant seniority.

Wife interrupted her career to follow her husband in his career. These interruptions caused wife to lose seniority. When a spouse sacrifices seniority for the sake of a marriage, a court may consider that loss of seniority as favoring an award of alimony. See, *Kennedy v. Kennedy*, 622 So. 2d 1033 (Fla. App. 1993) (Diamantis, J., dissenting); *Brook v. Brook*, 289 So. 2d 766 (Fla. App. 1974); *In re Marriage of Beeh*, 214 N.W.2d 170 (Iowa 1974); *In re Marriage of Brown*, 462 N.W.2d 683 (Iowa App. 1990); *LaValle v. LaValle*, 430 N.W.2d 224 (Minn. App. 1988); *In re Marriage of Tibbles*, 63 Or. App. 774, 665 P.2d 1267 (1983); *Carty v. Carty*, 87 Wis. 2d 759, 275 N.W.2d 888 (1979). Accord *Prosser v. Prosser*, 156 Neb. 629, 57 N.W.2d 173 (1953).

We next consider husband's ability to pay. According to husband's 1991 W-2 form, his monthly wages, after taxes, are $1,835.75. Husband's monthly pension income, after deducting for taxes, his VA payment, and his court-ordered payment to wife, is $751.88. Husband's stated monthly expenses are $2,121 plus $75.44 automatically deducted from his pension for life insurance. In all, husband's income outstrips his expenses by $391.19 per month.

We also note wife's need for support. According to her 1991 W-2 form, her monthly wages, after taxes, are $1,367. Her monthly income from husband's pension is $335. Wife's stated expenses are $2,254.73 plus $104.39 automatically deducted from her paycheck for health insurance. Husband argues that wife's housing expenses are too high because she has retained

the marital residence and must pay both the mortgage and the home improvement loan, which total $781.52 per month. Husband suggests that we replace this expense with a $400 expense for an "average rental expense" and order the house sold. We are constrained to point out that, at trial, wife requested the marital residence and husband stated that he had no objection to this request. Additionally, husband failed to present any evidence of the cost of an average monthly rental. In all, wife's expenses outstrip her income by $657.12 per month.

In light of husband's positive monthly balance, wife's negative monthly balance, and wife's 20 years of lost seniority, we find that the trial court did not abuse its discretion in awarding wife $300 per month for 10 years.

Husband next asserts that the trial court erred in awarding wife $250 in temporary attorney fees as part of the court's temporary order and $500 in attorney fees as part of the dissolution decree. In dissolution proceedings, an award of attorney fees depends on a variety of factors, including the amount of property and alimony awarded, the earning capacity of the parties, and the general equities of the situation. *Preston v. Preston*, 241 Neb. 181, 486 N.W.2d 902 (1992); *Smith v. Smith*, 222 Neb. 752, 386 N.W.2d 873 (1986). The property division in the present action resulted in wife receiving a net deficiency of $17,800 and husband receiving a net surplus of $5,000. This discrepancy is somewhat remedied by the monthly payments that wife will receive from husband. Those monthly payments, however, do not compensate wife so completely as to justify a reversal of the trial court's award of attorney fees. We find that the trial court did not abuse its discretion in awarding attorney fees.

The judgment of the trial court is affirmed as modified herein.

AFFIRMED AS MODIFIED.

WHITE, J., participating on briefs.