IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

WILSON V. WILSON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

JON R. WILSON, APPELLANT,
V.
KELLY M. WILSON, APPELLEE.

Filed January 21, 2014.    No. A-12-1031.

Appeal from the District Court for Dodge County: GEOFFREY C. HALL, Judge. Affirmed in part, and in part reversed.

Bradley D. Holtorf, of Sidner, Svoboda, Schilke, Thomsen, Holtorf, Boggy, Nick & Placek, for appellant.

Denise E. Frost, of Johnson & Mock, for appellee.

INBODY, Chief Judge, and MOORE and RIEDMANN, Judges.

RIEDMANN, Judge.

## I. INTRODUCTION

Jon R. Wilson appeals from the decree of dissolution issued by the district court for Dodge County in his divorce from Kelly M. Wilson. Jon challenges the trial court's division of the marital estate and the award of attorney fees to Kelly. Finding that the court erred in not classifying a $150,000 note to Jon's mother as a marital debt, we reverse in part.

## II. BACKGROUND

Jon and Kelly married in 1996. During the course of their marriage, they had three children and moved several times in support of Jon's career as a commercial lender. Around 2006, Jon began purchasing, fixing, and reselling (flipping) homes in order to generate extra income. The venture was successful for a few years, but became unprofitable in 2008 due to the national housing market crash. As a result, Jon and Kelly could not sell some of the homes they

had purchased for flipping. In 2010, they were forced to sell their residence and downsize to one of the homes they had originally intended for flipping.

In 2011, Jon filed for divorce. By the time of trial, he and Kelly had largely agreed on issues of child custody, support, and alimony, but they litigated the property division. The case went to trial in July 2012. At the time of trial, either Jon or Kelly claimed the following list of items were marital assets or liabilities:

1. A residence on N. Clarmar Avenue in Fremont, Nebraska: Kelly and the children resided in this home, which was valued at $145,000 and subject to a mortgage of $96,704.64 and a home equity loan of $20,000.

2. A residence on E. 5th Street in Fremont: Jon and the children resided in this home, which was valued at $110,000 and subject to no debt. Jon notes that he paid off the mortgage for the home using a $53,700 nonmarital gift from his father's estate and $18,151 in marital funds. He fixed up the property and paid off delinquent taxes using a gift of $12,000 from his mother and a portion of the $20,000 second mortgage taken against a residence on Brentwood Drive.

3. A residence on Brentwood Drive in Fremont: This residence was intended to be for flipping. It was valued at $239,000 and subject to a first mortgage of $86,150.26 and a second mortgage of $20,044.40. Jon argued it was also subject to a $150,000 note to his mother. At the time of trial, the Wilsons had entered into a purchase agreement for the home. The buyers had agreed to pay $237,000, and the estimated costs of selling the home were $25,081.24, leaving the Wilsons with net proceeds of $211,918.74.

4. A residence on N. Hancock Street in Fremont: This residence was valued at $62,000 and subject to a mortgage of $78,617.24.

5. Kelly's retirement account with ACI WorldWide Inc.: The retirement account has a balance of $64,503.69, but was subject to a loan of $26,380.40. The couple took the loan against the account for marital purposes.

6. Kelly's retirement account with Bank of the West: This account has a value of $1,995.60.

7. Jon's retirement account at Great Western: This retirement account has a balance of $24,181.67.

8. Jon's retirement account at a Fremont bank: This retirement account has a balance of $104,803.48, but part of the value came from a promissory note that will require litigation to retrieve.

9. Household goods: The parties split up various household furnishings. Jon estimates the value of his goods around $5,000 and the value of Kelly's goods around $11,000. Kelly estimates the value of her goods around $5,000 and the value of Jon's goods around $11,000.

The parties do not agree that all of the assets and liabilities on this list are marital, but at least one party claimed each of the items was a marital asset or liability. The parties agreed that certain other assets were nonmarital.

The parties disagreed about the nature of the $150,000 note to Jon's mother. Jon testified that his father frequently partnered with him in flipping homes, either sharing in ownership or loaning money at a reasonable interest rate. In this case, he explained that his father provided him with $150,000 for the Brentwood house sometime before his father's death in February 2011. His father's estate proceeding, which was filed on May 31, reflected an account receivable

in that amount from Jon. Jon did not draft a note or other document reflecting the debt until July, 2 days after the parties had separated and 10 days before filing for divorce. In the note, Jon obligated himself but did not list Kelly as a debtor. As of November, Jon had not made any payments on the note.

The trial court awarded both parties the personal property in their possession and their retirement accounts. With respect to the residences and associated debts, the trial court found that although both parties agreed with the plan for flipping homes, Jon was the driving force behind the business and in a better position to manage the properties and their associated risks. Accordingly, the trial court awarded Kelly the Clarmar house and required that she assume the first mortgage associated with that property. Jon received the properties on 5th Street, Brentwood Drive, and Hancock Street and the debts associated with those properties. The trial court required Jon to assume responsibility for the home equity loan taken out against the Clarmar house and the $150,000 note to his mother. The court found "insufficient credible evidence to indicate that [the note] is a marital debt." Finding that this property split was inequitable, the trial court also ordered Jon to pay Kelly an equalization payment of $40,000.

The trial court also required Jon to pay $5,000 of Kelly's attorney fees.

Jon timely appealed.

## III. ASSIGNMENTS OF ERROR

On appeal, Jon argues that the trial court abused its discretion in its property division, ordering an equalization payment, and awarding Kelly attorney fees.

## IV. STANDARD OF REVIEW

In actions for dissolution of marriage, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Reichert v. Reichert*, 246 Neb. 31, 516 N.W.2d 600 (1994). This standard of review applies to the district court's determinations regarding division of property, alimony, and attorney fees. *Id*.

## V. ANALYSIS

### 1. DIVISION OF MARITAL ESTATE

Jon argues that the trial court's division of the marital estate assets and liabilities was inequitable. In particular, he argues that the trial court intended to divide the property equally, but erred in determining that a $150,000 note to his mother was a nonmarital debt.

Neb. Rev. Stat. § 42-365 (Reissue 2008) governs the trial court's authority to divide the marital estate and award alimony. Section 42-365 dictates that the purpose of property division "is to distribute the marital assets equitably between the parties." Equitable property division is a three-step process. First, the trial court classifies properties and liabilities as marital or nonmarital. Second, the trial court values the marital assets and liabilities. Finally, the court calculates and divides the estate equitably between the parties. See *Heald v. Heald*, 259 Neb. 604, 611 N.W.2d 598 (2000).

(a) Classification of $150,000 Note

Jon argues that the trial court erred in the first step of dividing the estate by finding that the note to his parents was not a marital debt. In Nebraska, a marital debt is "'one incurred during marriage and before date of separation by either spouse or both spouses for joint benefit of parties.'" *McGuire v. McGuire*, 11 Neb. App. 433, 448, 652 N.W.2d 293, 305 (2002). The burden of proof is upon the party who claims the debt is nonmarital. *Id.*

Although the trial court acknowledged the existence of a $150,000 obligation from Jon to his mother, it determined that there was "insufficient credible evidence to indicate that this is a marital debt." The evidence reveals, however, that the debt was incurred sometime before Jon's father passed away in February 2011 and prior to the parties' separation. The existence of the debt was documented in Jon's father's estate proceedings in May 2011. Jon testified that his father provided him the money to purchase the Brentwood house, which was purchased as part of the business of flipping homes. Kelly did not deny that Jon's father provided the money before his death for this purpose; rather, she claimed ignorance of the financial arrangements entered into between Jon and his father. The evidence was sufficient to prove that the loan was a marital debt. And, as stated above, the burden was upon Kelly to prove the debt was nonmarital. Although Kelly presented evidence that she was not obligated to pay the debt because she was not listed as a debtor on either the estate inventory or the subsequent promissory note, she did not present any evidence to contradict Jon's evidence that the loan was made during the course of the marriage for the joint benefit of the parties. Therefore, we find that the trial court abused its discretion in failing to classify the $150,000 loan as a marital debt and in failing to include it in the marital estate. However, given the absence of evidence of an interest rate at the time the loan was made, we do not include any interest in calculating the extent of this marital debt. With respect to the other assets and liabilities at issue, the trial court determined that the four residences and both parties' retirement and investment accounts were marital assets. The court also found that Jon had separate assets, including a $52,700 devise from his father's estate and a "521 college savings plan[]" funded by his parents. With respect to liabilities, the court found that the loan against Kelly's 401K, the home equity line of credit (HELOC) loan taken out against the Clarmar house, the mortgages taken out against the various properties, and the cost of the Brentwood house sale were marital debts. We find no error in these determinations.

(b) Property Division

With the exception of certain items of personal property, the parties agreed on the value of their various assets and debts. The trial court awarded the property as follows:

Jon received the personal property in his possession, his bank account, his retirement accounts, the Hancock house and the mortgage on that property, the 5th Street house, the Brentwood house and its associated mortgages, and the HELOC loan on the Clarmar house. Kelly received the personal property in her possession, her bank account, her retirement accounts and the associated loan, and the Clarmar house and the first mortgage on that property.

The marital assets awarded to Jon equal approximately $483,000 when adding the value of the three pieces of real estate, his 401K, and his investment account. The amount of marital debt allocated to him for the three pieces of real estate and the costs of the sale of the Brentwood house is approximately $230,000. This leaves a total net award to Jon of approximately

$253,000. The marital assets awarded to Kelly include the Clarmar house and her two 401K accounts. These equal approximately $212,000. Kelly was allocated the debt on the Clarmar house and the loan against her 401K, totaling approximately $121,000. This leaves a net award of approximately $91,000 to Kelly. Jon was ordered to pay an equalization payment of $40,000 and attorney fees of $5,000, leaving him a total award of $208,000. Kelly's total award was $136,000. The trial court did not set forth a value of each party's personal property, and the evidence is each party claimed that his or her property was valued at $5,000 and that the other party's property was valued at $11,000. We therefore find that the value of each party's personal property cancels out that of the other party, and we do not include it in our calculations.

The trial court stated that it awarded an equalization payment to "equalize the division of the marital estate." Based upon our finding above that the trial court abused its discretion in determining that the $150,000 loan was a nonmarital debt, we must modify its division of property. We find no error in assessing the full value of the $150,000 loan against Jon for two reasons. First, he was awarded the property to which the $150,000 was applied. Second, only Jon's name appears on the inventory and the promissory note as the debtor.

Assessing the $150,000 debt against Jon leaves him with a total award of the marital estate of $58,000. We therefore reverse the order requiring a $40,000 equalization payment. This results in an award in favor of Jon in the amount of approximately $98,000 and an award in favor of Kelly in the amount of $95,000.

Jon argues that the court erred in assessing him the HELOC loan of approximately $20,000 on the Clarmar house when the house, itself, was awarded to Kelly. The trial court noted in its order, however, that Jon was better situated to manage the risk and debt associated with the real estate. And even with the HELOC loan, Jon still receives just over 50 percent of the marital estate. We find no abuse of discretion in the trial court's assessment of this debt to Jon.

### 2. EQUALIZATION PAYMENT AND ATTORNEY FEE

Jon argues that the trial court abused its discretion in ordering him to pay Kelly a lump sum of $40,000 to equalize the estate and in ordering him to pay $5,000 of Kelly's attorney fees. Because we have determined that the $150,000 should have been included as a marital debt and that this debt should be borne solely by Jon, we reverse the trial court's order of a $40,000 equalization payment.

We affirm, however, the trial court's award of an attorney fee of $5,000 to Kelly. Given the disparity in income between the parties and the fact that Kelly did not seek alimony, we are unable to conclude that the trial court abused its discretion in making this award.

### VI. CONCLUSION

Because we determine that the trial court erred in determining that the $150,000 loan was a nonmarital debt, we reverse that portion of the decree. We agree that the $150,000 debt shall be borne solely by Jon, but to equalize the division of the marital estate, we reverse the trial court's order of a $40,000 equalization award to Kelly. We affirm the remainder of the trial court's decree.

AFFIRMED IN PART, AND IN PART REVERSED.